*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0421p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARIO ANDRETTI; M.A. 500, INCORPORATED,
*Plaintiffs-Appellants/*
*Cross-Appellees,*

*v.*

BORLA PERFORMANCE INDUSTRIES, INCORPORATED,
*Defendant-Appellee/*
*Cross-Appellant.*

Nos. 04-1835/2404/2406

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71258—Robert H. Cleland, District Judge.

Argued: September 15, 2005

Decided and Filed: October 21, 2005

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Eric D. Scheible, WINEMAN & SCHEIBLE, Bloomfield Hills, Michigan, for Appellants. Jeffrey P. Thennisch, DOBRUSIN & THENNISCH, Birmingham, Michigan, for Appellee. **ON BRIEF:** Eric D. Scheible, WINEMAN & SCHEIBLE, Bloomfield Hills, Michigan, for Appellants. Jeffrey P. Thennisch, DOBRUSIN & THENNISCH, Birmingham, Michigan, Melvin M. Raznick, LAW OFFICES OF MELVIN RAZNICH, Southfield, Michigan, for Appellee.

_____

## OPINION

_____

RALPH B. GUY, JR., Circuit Judge. This case involves a dispute over Mario Andretti's right of publicity. Mario Andretti and Car Sound Exhaust System, Inc. (Car Sound) entered into a contract in which Andretti agreed to be Car Sound's corporate spokesperson. During the contract period, defendant Borla Performance Industries, Inc. (Borla) advertised a statement Andretti had made about Borla's product. Andretti had no prior knowledge and did not give Borla permission to use his name or quotation. Andretti and M.A. 500, Inc. (collectively, "Andretti") sued Borla, seeking a permanent injunction and damages for violating Andretti's right to publicity, tortiously interfering with a business relationship, violating the Michigan Consumer Protection Act, quantum meruit, violating the Lanham Act §§ 1125(a) and 1125(c), and unfair competition. The district court

1

granted summary judgment to Borla on all the damage claims, but issued the permanent injunction against Borla sought by Andretti. The court then awarded Rule 11 sanctions against Andretti, ordered Andretti to pay the costs incurred by Borla after it made an unsuccessful Rule 68 offer of judgment, denied Borla's other requests for costs and fees, and denied Andretti's request for costs. We affirm the district court's rulings on every issue.

## I.

The facts underlying this case are undisputed and uncomplicated. Mario Andretti was a successful and well known race-car driver before he retired from automobile racing. Andretti is now a corporate spokesman for companies that contract with Andretti for the exclusive right to utilize his name, image, likeness, and personal services. On November 1, 2001, Andretti and Car Sound, a manufacturer of after-market exhaust systems and catalytic converters, entered into a contract that provided Car Sound with the exclusive right for four years to utilize Andretti's rights of publicity with regard to exhaust systems. Borla, Car Sound's largest direct competitor, began an advertisement campaign in the spring of 2003 that included a quote from Andretti in which he praised a Borla product. Borla received permission to use the quotation from the publication in which the quote originally appeared, but it did not seek or receive Andretti's permission.

Andretti filed a five-count complaint and a motion for a preliminary injunction against Borla in Oakland County Circuit Court, Michigan, on March 20, 2003. Borla removed the complaint to federal court. To demonstrate that the amount in controversy exceeded the federal diversity jurisdiction requirement of $75,000, Borla's attorney attached his own declaration to the notice of removal stating that Andretti's pre-suit demands to Borla were about $200,000. The parties stipulated to a preliminary injunction order on April 30, 2003. In June, Andretti filed an eight-count First Amended Complaint, which included claims for violation of his right to publicity, tortious interference with a business relationship, violation of the Michigan Consumer Protection Act, quantum meruit, violation of the Lanham Act §§ 1125(a) and 1125(c), and unfair competition. Borla made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 on December 22, 2003. Borla's offer included $15,000 for costs, expenses, fees, and damages and a permanent injunction "forever barring, enjoining, and restraining Defendant from using or disseminating any advertisement or promotional material that contains the quotation given by Plaintiff, Mario Andretti, on page 17 of the Summer 2001 edition of the C5 Registry." Andretti rejected the Rule 68 offer of judgment.

Borla then filed several motions for summary judgment, including a motion for summary judgment on Count II, tortious interference with a business relationship, and a motion for summary judgment on Count VIII, Unfair Competition. Borla also moved for summary judgment on the remaining claims, arguing that since Andretti could not show any damages, his claims were moot due to Borla's offer to enter a permanent injunction. Andretti moved to strike this third motion on procedural grounds. The district court granted the motion on Count II on April 2, 2004; granted the motion on Count VIII on April 13, 2004;[1] granted the motion for summary judgment on the remaining claims on May 27, 2004; and denied Andretti's motion to strike (the May 27, 2004 Order). Also on May 27, 2004, the district court issued the Order Entering Judgment and Granting Injunction (the Judgment). The Judgment was in favor of Andretti and M.A. 500, Inc. and enjoined Borla from using Andretti's quotes or likeness or implying that Andretti endorsed Borla's products. The permanent injunction was worded identically to the preliminary injunction. Andretti appealed from the May 27 Order but not the Judgment.

---

[1]Andretti has not appealed the April 2 and April 13 orders.

Borla then moved for costs, sanctions, and attorney fees pursuant to Federal Rule of Civil Procedure 54(d); Federal Rule of Civil Procedure 68; 15 U.S.C. § 1117(a) (the Lanham Trademark Act); 15 U.S.C. § 505 (the Copyright Act); and Federal Rule of Civil Procedure 11. On August 27, 2004, the district court ruled that Andretti was a prevailing party and therefore that Borla was not entitled to costs or attorney fees as provided in Rule 54(d) and the Lanham Act. The court also determined that Borla was not entitled to attorney fees under the Copyright Act because, even though Borla had argued that several of plaintiffs' claims were preempted by the Copyright Act, plaintiffs had not directly alleged any Copyright Act claims and the court had not ruled that any of plaintiffs' claims were preempted.[2] The district court did award Rule 11 sanctions against plaintiffs because plaintiffs failed to voluntarily dismiss Count VIII of the Amended Complaint, and ordered plaintiffs to pay defendant the costs and attorney fees incurred in pursuing the motion for summary judgment on that claim. Furthermore, the district court awarded Borla its costs incurred after December 22, 2003, the date it made its Rule 68 offer of settlement, because the relief obtained by plaintiffs was not more favorable than the Rule 68 offer. The costs totaled $5,393.35. Finally, the district court rejected plaintiffs' requests for costs as the prevailing party under Rule 54(d) because their "judicially sanctioned victory was insignificant and the final disposition of this case amounted to a victory for Defendant." The parties cross-appealed.

## II.

On appeal, plaintiffs argue that the district court erred by (1) denying its motion to strike Borla's motion for summary judgment, (2) granting Borla's motion for summary judgment based on the lack of evidence of damages, (3) awarding Borla costs under Rule 68, (4) sanctioning plaintiffs under Rule 11, and (5) refusing to award Andretti costs under Rule 54(d). Defendant argues that we lack jurisdiction to consider plaintiffs' appeal because they appealed just the order granting defendant's motion for summary judgment but not the judgment itself. It also cross-appeals the district court's August 27, 2004 Order, arguing that the district court erred by (1) determining that plaintiffs were the prevailing party, (2) denying its motion for fees under 15 U.S.C. § 1117, and (3) denying additional sanctions against plaintiffs for their refusal to voluntarily dismiss Count II.[3] We turn first to the jurisdiction issue.

## A.     Jurisdiction

Borla contests this court's jurisdiction over Andretti's appeal of the May 27, 2004 order because Andretti has not appealed the judgment, and if we were to reverse the district court's ruling against Andretti, Borla contends the district court's judgment predicated on mootness would somehow remain in place with a hypothetically "live" damages claim, which is inconsistent with the doctrine of mootness. Borla had previously moved to dismiss Andretti's appeal, but another panel of this court rejected Borla's motion, stating simply: "The fact that the plaintiffs did not also appeal the injunctive relief granted in their favor does not render moot their appeal of the dismissal of the claims for damages." (No. 04-1835 Order of 9/29/04). We agree.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 because a final judgment has been entered. Andretti was not required to appeal a judgment in his favor in order to bring his appeal of a contemporaneously issued order adverse to his interests. If we were to decide that the May 27, 2004 order was incorrect because there was an issue of fact as to Andretti's damages, the

---

[2] Borla does not appeal the ruling regarding fee shifting under the Copyright Act.

[3] Borla also argues that we could affirm the district court's grant of summary judgment for alternative reasons, specifically that the state law claims were preempted by copyright law and Andretti had no standing to bring a Lanham Act claim. We need not address these arguments since we agree with the district court that Andretti had no evidence of damages.

order would be vacated and remanded to the district court for proceedings consistent with our opinion.  The judgment would still be valid and its injunction still in place.  It would no longer be a final judgment because the district court would be required to conduct further proceedings consistent with our hypothetical decision, but the judgment would not be "wholly inconsistent" with our decision regarding damages, as Borla argues.  In any event, we explain immediately below why the district court correctly decided that Andretti failed to produce evidence of damages, and therefore the effect of a reversal is purely hypothetical.

## B.     Plaintiffs' Motion to Strike Defendant's Motion for Summary Judgment

The district court's amended scheduling order set the discovery and dispositive motion deadlines as January 23, 2004, and February 23, 2004, respectively.  Borla filed a motion to compel discovery on February 13, 2004, and the district court granted Borla's motion at a hearing on February 19, 2004, and in a written order dated February 26, 2004.  The order required plaintiffs to provide renewed discovery responses by February 27, 2004, and for Andretti to reappear for a deposition by March 8, 2004.  On March 8, 2004, Borla filed its motion for summary judgment arguing that Andretti's lack of evidence of damages combined with Borla's Rule 68 offer rendered the litigation moot.  Borla did not seek leave of the court for permission to file the late motion.  Andretti filed a motion to strike Borla's motion because it was filed after the February 23, 2004 deadline for dispositive motions.

The district court correctly analyzed the late motion as a request to modify the scheduling order.  "A [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge . . . ."  FED. R. CIV. P. 16(b).  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks and citation omitted).  A district court should also consider possible prejudice to the party opposing the modification.  *Id.*  We review for abuse of discretion a district court's decision to amend its scheduling order to allow a late filing.  *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).  "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard."  *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004).

The district court found good cause for the late filing and no prejudice to plaintiffs and it accordingly denied plaintiffs' motion to strike Borla's motion.  The court correctly determined that defendant had good cause because Andretti did not complete his compelled responses to Borla's discovery requests until after the scheduled dispositive motion deadline, the court had previously granted Borla leave to file two still-pendng dispositive motions after the deadline, and Borla's motion raised an issue of justiciability.  Moreover, Andretti has not shown that he suffered any prejudice because the motion was filed two weeks late.  His only claim of prejudice is that the district court considered the motion and then ruled against him on the merits.  There is no indication of prejudice, however, because there is no indication that the outcome of the motion would have been different had Borla filed it before the deadline.

## C.     Borla's Motion for Summary Judgment

We review *de novo* the district court's grant of summary judgment.  *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).  Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The district court decided that Andretti did not produce any evidence of damages and therefore, in light of Borla's offer to enter a permanent injunction, Andretti's claims were moot. Andretti argues that there was a genuine issue of material fact as to his damages because he had submitted evidence of damages in his supplementation of document requests and in his interrogatory responses, because Borla failed to elicit evidence concerning damages when it deposed Andretti, and because Borla's attorney admitted the fact of Andretti's damages in his declaration supporting removal from state court to federal court.[4] Andretti's arguments are without merit for the reasons explained below.

### 1.      Andretti did not present evidence of damages to the district court

Andretti argues that he did provide evidence of his damages to the district court because his supplemental responses to Borla's document requests were submitted as evidence. The supplemental responses consisted of Andretti's identification of documents that responded to each document request. The documents were identified by Bates Stamp numbers. The actual documents were not presented as evidence by either party. According to plaintiffs' representations in the briefs, some of the documents identified in the response were contracts between Andretti and various corporations in which Andretti agreed to be a corporate spokesperson for considerable compensation. One of the contracts was Andretti's agreement with Car Sound, which revealed that Car Sound paid Andretti $500,000 annually for the use of his rights of publicity. Plaintiffs argue that the reference to certain Bates Stamp numbers that correlate with the contracts "demonstrates there is a host of evidence as to both the nature and amount of Andretti's damages in this case." We disagree. Even though plaintiffs had the documents when they responded to the motion, plaintiffs admit that neither they nor Borla presented the documents to the district court. Moreover, the supplemental response listed only Bates Stamp numbers, not a description of the documents that were provided. The district court could not consider the evidentiary value of documents of which it was not aware.[5]

### 2.      The response to interrogatory did not create genuine issue of damages

Andretti claims that one of his interrogatory responses provides sufficient evidence of damages. Interrogatory No. 22 asked: "Please describe in detail how Plaintiff alleges that his good will and reputation has been damaged by Borla's advertisement at issue in this litigation, including but not limited to specific examples of how Borla's advertisement has affected Plaintiff's good will and reputation." Andretti replied:

> Andretti objects to this interrogatory as overly broad, unduly burdensome, requests confidential and proprietary information, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Borla's advertisement has damaged Andretti's goodwill and reputation in the sense that the automotive after-market industry is well aware of Andretti's exclusive, long-term engagement with Car Sound. Andretti's occupation, now that his racing career is over, is that of a corporate spokesperson. His rights of publicity are his largest and greatest asset. It would be very easy for folks in the highly competitive automotive industry, given Borla's actions, to consider Andretti one who provides his services purely for the money and without any allegiance or loyalty to the relationships he has

---

[4]M.A. 500's possible damages was not an issue before the district court, as Andretti declared: "M.A. 500, Inc. has no interest, legally or otherwise, in the claim I have made in the . . . matter."

[5]Furthermore, Andretti has not presented the documents to this court on appeal. Even if he did, we would be unable to review them because we generally decline to review evidence not presented to the district court. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003).

worked diligently to establish over the years. All of his hard work and dedication could be erased by the one selfish move of a competitor like Borla.

This response merely states a category of damages that Andretti might incur, but he does not claim that he has actually suffered any damages in this case. Possible damage to his reputation as a corporate spokesperson is purely hypothetical and is far too speculative to create a genuine issue of damages. *See*, *e.g.*, *Johnson v. Jones*, 149 F.3d 494, 507 (6th Cir. 1998) (holding that a court should not award damages that are "wholly speculative").

### 3.     Defendant's failure to ask about damages is irrelevant

According to Andretti, Borla should be estopped from arguing that there is no evidence of damages because Borla either knew of Andretti's damages or failed to elicit evidence concerning damages during discovery. This line of reasoning is without merit because once the movant of a summary judgment motion satisfies its burden by demonstrating the absence of a genuine issue of material fact, the nonmoving party "must produce specific facts demonstrating a genuine issue of fact for trial if it is to withstand summary judgment." *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). It was not Borla's burden to discover or produce evidence of Andretti's damages, especially when the evidence was exclusively within Andretti's control. Moreover, Andretti implies that Borla misled the district court because the contracts demonstrated Andretti's damages and Borla was familiar with the contracts, but Borla represented to the district court that no evidence of damages existed. The contracts standing alone did not provide evidence of Andretti's damages. They helped establish the value of corporate sponsorship contracts, but did not show that any current contract or future contract opportunity was impaired. Therefore, Borla did not mislead the court by arguing that Andretti had no evidence of actual damages.

### 4.     Attorney's declaration is not evidence of damages

Andretti contends that Borla's attorney's declaration contains an admission that Andretti incurred damages. Borla's attorney, Melvin Raznick, attached his own declaration to the notice of removal of Andretti's complaint to federal court based on diversity. Raznick declared that Andretti, through his attorney, demanded $200,000 in monetary damages in addition to a retraction of Borla's advertisement and Borla's promise not to run the ad in the future. Raznick also declared that

> based upon the Plaintiff's own claims of stated damages in the amount of $200,000.00, plus the additional costs that would clearly be incurred by BORLA if Plaintiff received his requested relief . . . it is my good faith belief that the amount in controversy in the present action at the time of this Notice [o]f Removal exceeds the $75,000.00 jurisdictional limit required under federal diversity jurisdiction.

Raznick's recounting of Andretti's demand for $200,000 is not the equivalent of declaring that he believed Andretti had indeed incurred damages of $200,000. Raznik's declaration necessarily implied that the amount in controversy was $200,000 *if proven*. Andretti's contention that the declaration creates a question of fact as to his damages is unavailing.

## D.     Rule 11 Sanctions

Borla moved for sanctions against Andretti pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 arising out of Andretti's refusal to voluntarily dismiss claims II and VIII from the Amended Complaint. The district court awarded sanctions against Andretti for failing to voluntarily dismiss Count VIII, but refused to award sanctions for his refusal to dismiss Count II. Borla and Andretti both appealed.

Rule 11 states:

> **(b) Representations to the Court.** By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>> (2)  the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>> (3)  the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

FED. R. CIV. P. 11(b)(1)-(3).

Rule 11 sanctions are warranted if the attorney's conduct was unreasonable under the circumstances. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). Additionally, 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

We review a district court's grant or denial of Rule 11 sanctions for abuse of discretion. *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003). "A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Ridder*, 109 F.3d at 293.

### 1.     Count II

Borla had moved for summary judgment on Count II, a claim for tortious interference with a contract or business relationship, on January 10, 2004. Borla sought Andretti's concurrence before filing its motion, but Andretti refused to voluntarily dismiss the claim.  Andretti offered to voluntarily withdraw Count II after Borla prepared and filed the motion. Borla refused to accept the voluntary dismissal because Andretti would not agree to pay Borla's attorney fees and costs incurred in filing the motion. Andretti's response to Borla's motion did not dispute the merits of the motion, but instead asked the court to award it costs and attorney fees expended in responding to the motion because Borla refused to accept their voluntary dismissal. The district court granted Borla's motion for summary judgment on Claim II, and deferred any decision regarding the award of costs and fees until after the case concluded.  The court also stated:

> The court is perplexed and disappointed by counsel's failure to stipulate to an appropriate order which would have eliminated the need for extensive briefing on this matter. The lawyers' (or quite possible parties') failure to stipulate to the relief requested before and after the instant motion was filed is most troublesome because it not only wastes judicial resources, but also creates unnecessary and avoidable expenses for the parties, one an individual involved in business and two corporations. . . .

Although Defendant might justifiably have concerns regarding Plaintiffs' refusal to voluntarily dismiss Count II before February 26, 2004, it still refused to agree to a voluntary dismissal without a condition that Plaintiffs pay Defendant's costs and legal fees. (Pls.' Resp. Ex. 2, February 26 Letter from Defendant's Counsel.) The court recognizes that Defendant might have agreed to permit Plaintiffs to voluntarily dismiss Count II and withdraw its motion for summary judgment, but still seek to recover its costs and fees.

The district court eventually denied Borla's motion for Rule 11 sanctions after issuing the judgment because it decided that both parties were at fault for allowing the motion for summary judgment on Count II to reach a judicial determination. Borla argues the district court should not have considered its role in forcing judicial resolution of an essentially undisputed motion, but Borla does not cite any case prohibiting the court's consideration of the Rule 11 movant's conduct when deciding whether to award Rule 11 sanctions.[6] Moreover, other courts have refused to award Rule 11 sanctions when both parties contributed to the waste of judicial resources. *See Kassner v. Ashley Plaza Mall Assocs.*, 758 F. Supp. 939, 941 (S.D.N.Y. 1991); *St. Jarre v. Heidelberger Druckmaschinen A.G.*, 816 F. Supp. 424, 427 (E.D. Va. 1993). We conclude that the district court did not abuse its discretion when it considered Borla's failure to accept Andretti's offer of voluntary dismissal. Borla's refusal cost the court time and resources by forcing it to analyze the substance of the motion, culminating in a nine-page opinion. Since both parties contributed to the unnecessary expenditure of judicial resources, the district court was justified in letting the costs rest where they originated.

### 2.     Count VIII

Andretti argues that the district court erred when it awarded sanctions against him for pursuing Count VIII. Count VIII of the Amended Complaint was titled "Unfair Competition." Four of the six substantive paragraphs making up the claim reference Michigan Compiled Laws §§ 429.42 - 429.43 of Michigan's trademark infringement statute. Section 429.42(a) requires a plaintiff to have a registered mark under that act, which Andretti did not. Andretti admitted that he did not have a registered mark as required by the statute. Instead of voluntarily dismissing the claim, Andretti moved to amend it so that he alleged a claim for common law unfair competition instead of statutory trademark infringement.

The district court granted Borla's motion for summary judgment on the claim and denied Andretti's motion to amend for three reasons. First, Andretti raised the motion to amend in his response to Defendant's motion for summary judgment—a practice prohibited by the local rules. Second, Andretti failed to submit a proposed amended complaint as required by the local rules. Third, Andretti's motion to amend was untimely. The court had entered a scheduling order pursuant to Rule 16, which set October 6, 2003, as the deadline for any amendments. Andretti filed its response and motion to amend on February 27, 2004. In *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003), we held that when a plaintiff moves to amend a complaint after the deadline for amendments in the scheduling order has passed, Rule 15(a)'s instruction for leave to be "freely given" must be read in conjunction with Rule 16's requirement that amendment of a scheduling order must only be made upon a showing of good cause and leave of the court. The district court denied his motion to

---

[6]Borla's sole citation is to *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982), which resolved an issue of awarding attorney fees as provided for by the Civil Rights Act of 1964. We held that under that statute, the prevailing party should ordinarily recover attorney fees, and that the plaintiff's perjury of a nonrelevant fact would not qualify as a "special circumstance" precluding her from recovering attorney fees. *Id*. *Price* does not support Borla's position because it evaluated the award of attorney fees under a different statute and standard than the one at issue here. Moreover, it does not preclude us from considering the movant's own actions. The *Price* court did consider the movant's actions, but considered them insufficient to negate the presumption that she should collect her attorney fees.

amend the complaint and dismissed Count VIII after determining that Andretti failed to show good cause why he did not move to amend his complaint sooner. Andretti has not appealed that ruling, but maintains that Rule 11 sanctions are inappropriate for what was, he contends, a drafting error and that a reasonable attorney would have thought he had solid ground for moving to amend the complaint to correct the error.

The district court did not abuse its discretion by imposing Rule 11 sanctions against Andretti. In addition to failing to properly research Count VIII before filing his complaint, which would have revealed that the statute required a registered mark and that his client did not have one, Andretti's attorney prolonged the inevitable at a cost to Borla by refusing to voluntarily dismiss the count and forcing Borla to pursue a dispositive motion in order to have the claim dismissed. Furthermore, Andretti has not explained before the district court or on appeal why he did not move to amend the claim once Borla brought the original claim's deficiency to Andretti's counsel's attention.

### E.     Rule 54(d) Costs

Rule 54(d) provides that the losing party should pay the prevailing party's costs: "Except when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." FED. R. CIV. P. 54(d)(1). After the district court issued the May 27, 2004 order and judgment, Andretti and Borla each argued that they were the prevailing party and entitled to recover their costs from the other. The district court concluded that Andretti was the prevailing party because judgment and a permanent injunction was entered in his favor. Accordingly, the court denied Borla's request for costs. The court also denied Andretti's request for costs, however, because its recovery was so insignificant in light of the fact that Borla voluntarily agreed to enter the injunction that the disposition of the case amounted to a victory for Borla. Borla and Andretti cross-appealed the district court's refusal to shift any costs under Rule 54(d). We review the district court's determination of appropriate cost shifting under Rule 54(d) for abuse of discretion. *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir. 1999).

#### 1.     The prevailing party

A party is the prevailing party under Rule 54(d) even when it is only partially successful. *Zackaroff v. Koch Transfer Co.*, 862 F.2d 1263, 1265-66 (6th Cir. 1988). In the context of fee-shifting statutes, the Supreme Court has held that a plaintiff is a "prevailing party" when he receives "at least some relief on the merits of his claim," even nominal damages. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001). The *Buckhannon* court also decided that for a party to be "prevailing" there must be a "judicially sanctioned change in the legal relationship of the parties." *Id*. at 605. *Buckhannon* overruled the "catalyst theory" that had been the caselaw in this and other circuits. *See Chambers v. Ohio Dep't of Human Servs.*, 273 F.3d 690 (6th Cir. 2001). Under that theory, a plaintiff "prevailed" for the purpose of fee shifting statutes if his lawsuit was causally related to voluntary actions taken by the defendant. *Id*. at 692. The *Buckhannon* court reasoned that "settlement agreements enforced through a consent decree" may serve as the basis for finding that a plaintiff prevailed because even though it does not always include a finding of liability, "it nonetheless is a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Id*. at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

As a panel of this court explained shortly after *Buckhannon* was decided, "the Court noted that an award of attorneys fees is appropriate where a plaintiff has obtained an 'enforceable judgment [] on the merits' or a 'court-ordered consent decree[],' but not under the catalyst theory, which 'allows an award where there is no judicially sanctioned change in the legal relationship of the parties.' Thus, the Court concluded that '[a] defendant's voluntary change in conduct, although

perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.'" *Chambers*, 273 F.3d at 693 (quoting *Buckhannon*).

Borla argues that Andretti is not the prevailing party because the only relief it won was volunteered by Borla and the district court ruled in its favor on the contested issue of damages. *Buckhannon* and *Chambers* stand for the proposition that a voluntary change that is not judicially sanctioned cannot support a finding of a prevailing party. The Supreme Court explicitly held that consent decrees involving voluntary agreement can support a determination that a party prevailed. Even though Borla volunteered to enter the court-ordered injunction, the injunction appears in a final judgment, it was judicially sanctioned by the district court, and it changed the legal relationship between the parties. Accordingly, the district court correctly concluded that Andretti is the prevailing party.[7]

### 2.    Discretion to deny the prevailing party its costs

A district court has the discretion to refuse to award costs to the prevailing party when "it would be inequitable under all the circumstances in the case" to do so. *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986) (emphasis omitted). A district court does not abuse its discretion to deny the shifting of costs when the prevailing party's expenditures are unreasonably large, when the prevailing party prolonged the litigation or injected unmeritorious issues, in cases that are close and difficult, and where "the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant." *Id.* (quoting *Lichter Found., Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959). Borla agreed from the beginning of this litigation to an injunction from using Andretti's quotation in any future advertisements. It was only Andretti's demand for damages that prevented the parties from settling this dispute. The district court did not abuse its discretion by concluding that Andretti's loss on the issue of damages amounted to a victory for Borla.

### F.    Attorneys Fees Under the Trademark Act

Borla moved for attorney fees under the Lanham Trademark Act. Andretti alleged several trademark violations, and the Lanham Act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a)(3). The *Buckhannon* court instructed that the term "prevailing party" is construed consistently among the several fee-shifting statutes. 532 U.S. at 603 n.4. Borla is not the prevailing party for the reasons described above and therefore is not entitled to attorney fees under the Lanham Act.

### G.    Rule 68 Costs

Rule 68 provides that anytime more than ten days before trial, a defendant may present a plaintiff with an offer of judgment against the defendant "for the money or property or to the effect specified in the offer." If the plaintiff rejects the offer of judgment, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." FED. R. CIV. P. 68. Although this circuit apparently has not set forth the standard of review for Rule 68 rulings, we join the other circuits that review *de novo* the legal interpretations of Rule 68, and review for clear error the factual findings concerning the circumstances under which Rule 68 offers were made. See *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003); *Basha v. Mitsubishi Motor Credit of America, Inc.*, 336 F.3d 451, 453 (5th Cir. 2003); *Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 645 (7th Cir. 2001); *First Nat'l Bank of Turley v. Fidelity & Deposit Ins. Co.*, 196 F.3d 1186,

---

[7]Even if we were to review the district court's determination of which party was the prevailing party de novo, we would reach the same result.

1189 (10th Cir. 1999); *Jordan v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997). *But see Le v. Univ. of Penn.*, 321 F.3d 403, 406 (3rd Cir. 2003) ("We have plenary review over both legal questions regarding the interpretation of Rule 68 and the construction of the offer of judgment."). Moreover, we should apply general contract principles to interpret Rule 68 offers of judgment. *Basha*, 336 F.3d at 453; *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991).

The district court awarded Borla its costs incurred after December 22, 2003, the date Andretti rejected Borla's Rule 68 offer of judgment. Andretti appeals that ruling, arguing that the final judgment was more favorable than Borla's Rule 68 offer of judgment for two reasons: the permanent injunction is more valuable to Andretti than monetary damages, and the specific wording of the Rule 68 offer's injunction was less favorable than the wording of the permanent injunction.

In support of his argument that a judgment in his favor and an injunction is more valuable than monetary damages, Andretti relies on *Lish v. Harper's Magazine Foundation*, 148 F.R.D. 516 (S.D.N.Y. 1993), which held that money damages are not the only measure of whether a plaintiff has obtained a "more favorable" judgment under Rule 68. We agree with the *Lish* court that a favorable judgment and an injunction can be more valuable to a plaintiff than damages. Unfortunately for Andretti, Borla's Rule 68 offer included damages and a permanent injunction, but the final judgment awarded Andretti an injunction only. Even though comparing the value of damages to an injunction is like comparing apples and oranges, in this case we must compare the value of an apple plus an orange versus only an apple. Andretti's argument that the injunction is worth more than the offer of an injunction plus damages is unpersuasive.

Andretti also argues that the injunction in the judgment is more valuable than the injunction in Borla's Rule 68 offer because the judgment's injunction is worded more favorably. Borla's Rule 68 offer volunteered a permanent injunction "barring, enjoining, and restraining Defendant from using or disseminating any advertisement or promotional material that contains the quotation given by Plaintiff, Mario Andretti, on page 17 of the Summer 2001 edition of the C5 Registry." In contrast, the permanent injunction in the judgment includes the following:

> 1. Using a quote or statement attributed to Mario Andretti in the Summer 2001 edition of the C5 Registry, as set forth in Plaintiff's Complaint, or any reproduction, counterfeit, copy or colorable imitation of said quote or statement in connection with the advertising, promotion, display, distributing, provision, sale, or offering for sale of the Defendant's goods or services to the public in the United States or internationally, or in any manner likely to cause others to believe that any of the Defendant's goods or services are affiliated, sponsored by, or connected with Plaintiff Mario Andretti;
>
> 2. Passing off, inducing, or enabling others to sell or pass off any good or service to the public as genuine, authorized, or otherwise emanating from or sponsored by Mario Andretti; and
>
> 3. Committing any other acts calculated to cause purchasers or consumers to believe that the Defendant's products or services are affiliated with Mario Andretti including taking all available steps to refrain from any future uses of the quote or statement attributed to Andretti in all advertisements, promotional publications, internet websites, and other media wherein the public would encounter or view the quote or statement.

Borla contends that at the time the parties were negotiating the Rule 68 offer, both parties understood that Borla's offer was to convert the preliminary injunction into a permanent injunction and that the wording in the Rule 68 offer was just a shorthand expression of Borla's willingness to

enter into a permanent injunction. Indeed, the letters negotiating a possible settlement between the two attorneys representing Borla and Andretti indicate that the terms of a permanent injunction were never at issue; the only matter of disagreement was the amount of monetary damages. *See Basha*, 336 F.3d at 454 (considering letters exchanged by attorneys to determine if a Rule 68 offer of judgment included attorney fees even though the written offer did not explicitly include attorney fees). Moreover, the terms of the proposed injunction are not so significantly broader than the terms of the permanent injunction to render Andretti's actual recovery greater than the Rule 68 offer. The only offensive conduct ever at issue was Borla's print ad that included Andretti's quote. Both the proposed injunction and the permanent injunction equally prohibited Borla from engaging in that conduct.

**AFFIRMED.**