**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0471n.06

Case Nos. 13-5888; 13-5889

FILED

Jul 01, 2014

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DANNY MOORE and TRACY MOORE (13-5888), | ) | |
| | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED |
| and | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WASTE MANAGEMENT OF MISSISSIPPI | ) | TENNESSEE |
| INC., d/b/a WASTE MANAGEMENT OF | ) | |
| MISSISSIPPI-CORINTH (13-5889), | ) | |
| | ) | |
| Intervening Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | |
| INDUSTRIAL MAINTENANCE SERVICE | ) | |
| OF TENNESSEE, INC. and DESIGN-FAB, | ) | |
| INC., | ) | |
| | ) | |
| Defendants-Appellees. | | |

BEFORE: BOGGS, SILER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Danny Moore ("Moore"), Tracy Moore, and Waste Management

of Mississippi, Inc. (collectively "Plaintiffs") appeal the district court's grant of summary

judgment in favor of Defendant Design-Fab, Inc., formerly known as Industrial Maintenance

Service of Tennessee, Inc.[1] The Moores sued Design-Fab under theories of negligence and res

ipsa loquitur for injuries Moore sustained when he attempted to remove a waste container that

---

[1] Design-Fab and Industrial Maintenance Service are separate defendants; however, because
Design-Fab is the former Industrial Maintenance Service, we will refer only to Design-Fab.

Design-Fab had overloaded. Waste Management intervened because it had paid workers' compensation for Moore's injuries. On appeal, Plaintiffs argue that the district court erred in granting Design-Fab's motion for summary judgment. Plaintiffs further argue that the district court erred in denying the Moores' motion to modify the Federal Rule of Civil Procedure 16(b) scheduling order. For the reasons stated below, we **REVERSE** the district court's grant of Design-Fab's motion for summary judgment and **REMAND** for further proceedings; and we **AFFIRM** its denial of the motion to modify the scheduling order but suggest that the district court consider independently modifying the scheduling order on remand.

## BACKGROUND

### I.      Factual Background

In June 2010, General Electric Company ("GE") hired Design-Fab, an entity that provides maintenance support for industrial facilities, to do excavation and concrete work for a driveway repair on GE's premises. Design-Fab ordered a temporary 30-yard open-top container from Waste Management in order to complete the work. Prior to filling the container, Design-Fab signed an agreement with Waste Management that stated in relevant part "Customer [Design-Fab] agrees not to overload (by weight or volume)" the container. During the driveway repair, Design-Fab filled the container with gravel, dirt, and asphalt.

In July 2010, Design-Fab finished work at GE and called Waste Management to pick up the container. Waste Management sent a driver to haul the container, but the driver found that the container was too heavy to pick up, so Waste Management notified Design-Fab that it would need to download, or take out, enough of the container's contents so that it could be removed from GE's premises. Over the course of the next four months, Waste Management and Design-Fab had multiple conversations about who would download the container and who would pay the

additional cost, but Design-Fab never downloaded the container, and the container remained on GE's premises. During this time, more material was added to the container, and GE admitted that it may have contributed some of the additional waste. The container also gained significant weight during its prolonged exposure to the elements, such as rain, which caused the contents to absorb moisture and harden.

In November 2010, Moore, who was employed by Waste Management, drove to GE's premises to remove a container other than the one used by Design-Fab. When he arrived, a GE employee asked him to remove the overweight container. Moore knew by looking at the container that it was significantly overloaded by weight; however, he did not know the exact weight of the container because he was trained to use sight and feel to estimate weight and lacked measurement tools. Moore decided to partially hoist the container onto his truck so that he could open the container's back tailgate and empty enough of the contents so it could be hauled away. Moore hooked a cable from his truck to the container and began to hoist the container, at which point the truck's front tires left the ground and the truck began to rise in the air. Moore was going to let slack off his winch to lower the truck and unhook the container; however, the cable snapped before he could do so. The truck then violently crashed to the ground and bounced many times, causing Moore to suffer a permanent and severe spinal injury that rendered him totally disabled.

The cable was able to support 69,200 pounds, or 34.6 tons, of weight before it might snap. However, the container weighed 72,340 pounds, or 36.17 tons, at the time of the accident, which, according to an independent contractor hired to download the contents after the incident, was far in excess of the container's appearance as a result of the contents hardening like cement.

Notably, when using other Waste Management containers prior to the incident, Design-Fab's containers weighed between 1.67 tons and 3.04 tons.

## II.     Procedural Background

The Moores filed suit in the United States District Court for the Western District of Tennessee, alleging theories of negligence and res ipsa loquitur against Design-Fab and GE. Waste Management intervened to protect its workers' compensation lien. Design-Fab asserted the affirmative defense of comparative fault. Plaintiffs eventually settled their claims against GE, thus removing GE from the litigation.

On January 26, 2012, a magistrate judge issued a Rule 16(b) scheduling order. Pursuant to the order, the Moores were required to disclose their expert-witness information by October 9, 2012. However, on December 7, 2012, almost two months after their expert-witness disclosure deadline expired, the Moores moved the district court to modify the scheduling order so that they could submit expert medical, vocational, and psychiatric evaluations taken after the deadline. They stated that the expert evaluations could not be obtained until Moore reached maximum medical improvement ("MMI"), which occurred on September 17, 2012.

The magistrate judge denied their motion, finding that the Moores had not demonstrated the requisite good cause to amend the scheduling order. The magistrate judge incorrectly stated that Moore reached MMI on November 19, 2011, and found that this gave the Moores almost a year to meet the discovery deadline. The magistrate judge also concluded that "[t]he better practice for [the Moores] would have been to make a timely request for extension of the scheduling order before this deadline expired, and as such [there is] no good cause to permit enlarging this scheduling order." The magistrate judge further found that modification would prejudice Design-Fab, which properly and timely disclosed its expert, because it "would sanction

such a delaying strategy which unfairly advantages the [Moores] and causes [Design-Fab] additional time and expense[] to include possibly additional expert witnesses." The magistrate judge did, however, make an exception so the Moores could disclose either a doctor who was seen for anxiety and depression or Dr. Randall Moskovitz, a psychiatrist. The Moores thus disclosed Dr. Moskovitz as an expert they intended to call at trial.

The Moores moved the district court to alter or amend the magistrate judge's order. They argued that the magistrate judge erred in relying on a doctor's note that incorrectly stated Moore's MMI date, that the magistrate judge should have allowed the extension because they had less than two months to receive expert evaluations and take depositions, and that the magistrate judge's refusal to amend prejudiced their case. In affirming the magistrate judge's order, the district court found that the magistrate judge relied on independent evidence of the Moores' lack of requisite due diligence because the magistrate judge had recognized in a subsequent order that he cited an incorrect MMI date and had reiterated that there was "sufficient other, independent evidence of lack of diligence which included the failure to timely move for modification of the scheduling order."

Design-Fab filed a motion for summary judgment, arguing that it was not negligent because it did not overload the container under the terms of the agreement; it could not foresee that Moore would lift the container in violation of Waste Management policy; it was not the actual or legal cause of Moore's injuries; and Moore was at least 50% responsible for his injuries. In response, the Plaintiffs argued that material issues of disputed fact existed as to each of Design-Fab's arguments. The district court granted Design-Fab's motion for summary judgment and dismissed the case, finding that:

> [a]lthough . . . there are disputed issues of material fact on whether Design-Fab
> owed a duty to Moore, whether Design-Fab's actions were the actual cause of

Moore's injuries, and whether Design-Fab's actions were the proximate cause of Moore's injuries, . . . as a matter of law, Moore was more at fault for his injuries than Design-Fab, and as such **GRANTS** Design-Fab's Motion for Summary Judgment . . . .

## DIVERSITY JURISDICTION

This matter was filed in federal court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). When deciding issues of substantive law, we apply the law of the state's highest court. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). "If, however, the state's highest court has not decided the applicable law, then [we] must ascertain the state law from all relevant data," which includes the state's appellate court decisions if we are not convinced that the state's highest court would hold otherwise. *Id.* (internal quotation marks omitted).

## DISCUSSION

### I.      Motion for Summary Judgment

The Plaintiffs argue that the district court violated fundamental summary judgment principles by improperly weighing the evidence; failing to consider critical, relevant evidence; failing to view the evidence in the light most favorable to the non-movant; failing to draw all reasonable inferences in favor of the non-movant; making an allocation of fault while duty and proximate cause were in dispute; failing to consider GE's comparative fault; failing to consider Design-Fab's fault in refusing to correct the dangerous condition it created; and finding that Moore was at least 50% or more at fault for his injuries.

Design-Fab argues that the district court correctly concluded that it was entitled to summary judgment under Tennessee's comparative fault principles because Moore acted

unreasonably in knowingly confronting the risk of hoisting an overweight container in violation of company safety policies, because reasonable minds could only conclude that Moore was 50% or more at fault, and because there were not genuine issues of material fact. It further argues that the district court did not err by not expressly considering and ruling on GE's comparative fault.

"We review a [district court's] grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). Under Tennessee's modified comparative fault system in negligence cases, "a plaintiff who is less than [50%] at fault may recover damages in an amount reduced by the percentage of fault assigned to the plaintiff." *Ali v. Fisher*, 145 S.W.3d 557, 561 (Tenn. 2004).

"In the majority of cases, . . . comparison and allocation of fault issues are properly left to the jury." *Prince ex rel. Bolton v. St. Thomas Hosp.*, 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996) (citing *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)). Summary judgment may be granted in the defendant's favor if, viewing the evidence in the light most favorable to the plaintiff, reasonable minds could not differ that the plaintiff's fault was equal to or greater than that of the defendant or defendants. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91-92 (Tenn. 2000).

Applying these comparative fault and summary judgment principles, we hold that reasonable minds could differ as to whether Moore's fault was equal to or greater than that of all tortfeasors because the district court's allocation of fault did not consider the relative fault of settling defendant GE and because there are genuine disputes as to material facts. Therefore, we reverse the district court's grant of Design-Fab's motion for summary judgment and remand for further proceedings. Because we are remanding on these grounds, we need not reach Plaintiffs'

remaining arguments as to why the district court's grant of summary judgment should be reversed.

### A. Allocation of Fault Between Multiple Tortfeasors

Under Tennessee law, "in cases of multiple tortfeasors, plaintiff will be entitled to recover so long as plaintiff's fault is less than the combined fault of *all* tortfeasors." *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992) (emphasis added). Where a defendant argues that a plaintiff's fault precludes recovery, "[i]f the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that [his] fault was equal to or great[er] than that of the defendants, summary judgment in the defendant's favor may be granted." *Staples*, 15 S.W.3d at 91-92.

The Tennessee Supreme Court has recognized that "[t]he purpose of comparative fault under *McIntyre* is to link [defendants'] liability to [their] degree of fault in causing a plaintiff's damages," which requires consideration of all relevant parties. *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 654 (Tenn. 2003). It found that, in a case where the plaintiff filed separate actions, the defendant in one action was not prevented from asserting comparative fault and arguing that fault should be allocated to defendants of the separate action. *Id.* at 654-55. The court then acknowledged that the parallel situation of a plaintiff's suing two defendants in the same action and settling with one would not affect the consideration of the settling defendant in determining comparative fault. *Id.* at 655 ("A plaintiff's settling with one co-defendant under the comparative fault doctrine[] does not establish a basis for dismissal as to the remaining defendant. In these cases, the defendant is not deprived of the opportunity to have fault apportioned against [the settling defendant].").

In granting Design-Fab's motion for summary judgment, the district court concluded that Tennessee's modified comparative negligence doctrine precluded Moore's recovery and held that "Moore was more at fault for his injuries than Design-Fab." The court found that "Moore's injuries were both more easily foreseeable and more easily preventable by Moore than they were by Design-Fab, so Moore had a higher duty to ensure his own safety than did Design-Fab." The court did not mention or consider GE's fault in reaching its conclusion.

Therefore, the district court did not properly apply Tennessee law because it failed to consider GE's liability when determining the comparative fault of Moore and Design-Fab. Just as a defendant has the right to argue that fault should be allocated to non-parties, Plaintiffs have the right to have all tortfeasors considered, including settling defendant GE, in the allocation of fault. Without considering GE's liability, the court could not properly determine if Moore was more than 50% at fault and thus precluded from recovering against Design-Fab because it could not have accurately linked the parties' degrees of liability to their percentages of fault.

### B.  Genuine Disputes of Material Facts

A district court may not grant summary judgment if there is a genuine dispute as to any material fact. *See* FED. R. CIV. P. 56(a). First, there is a genuine dispute of material fact as to whether Design-Fab knew not to overload the container by weight. The district court found that Design-Fab was never informed of a specific weight limit and thus found this fact was not in dispute.[2] However, Plaintiffs offered evidence to the contrary. Waste Management employee Greg Miley testified in his deposition that he "definitely" told Design-Fab not to overload the

---

[2] Dale Cooper, the president of Design-Fab, testified in his deposition that he understood overfilling the container to mean by volume only and that it never occurred to him to worry about weight. He stated that he was never notified of a weight limit on the container and that he had previously rented that type of container from Waste Management without knowing a weight limit. He further stated that the containers, including the container in question, did not indicate their weight limit.

container by weight, and Design-Fab president Dale Cooper ultimately agreed in his deposition that the container was overloaded by weight. Further, Waste Management district manager Kevin Shackelford testified that salespersons are trained to tell the customer how much they can fill the container based on the type of material. Shackelford further stated that he asked Miley if he followed this procedure and that Miley said that he could not remember about this specific instance but that it was his common practice to do so on every account. Plaintiffs also offered evidence that Design-Fab knew or should have known not to overfill the container despite not knowing a specific weight because Design-Fab signed the contract prohibiting it from overfilling the container by weight and because Design-Fab had previously rented containers from Waste Management, which it only filled to a fraction of what it filled this container. Further, Miley testified that, in his opinion, contractors like Design-Fab would know not to fill a container all the way with concrete, dirt, asphalt, and aggregate.

Second, there is a genuine dispute of material fact as to whether Moore's actions in partially hoisting the container constituted common practice. The district court found that Waste Management's rule book did not allow employees to partially hoist containers and that Moore acted in contradiction to the rule book by doing so. The court further found that "[w]hether or not Moore acted consistently with common practice is immaterial to whether or not he was trained and aware of a company policy contained in the Rule Book." However, Plaintiffs offered evidence to dispute these findings. Waste Management, which employed Moore from 2002 through the incident in 2010, contained its protocol in a rule book and trained its employees according to the contents. The rule book required employees to estimate the weight of the container prior to loading it. It also stated that, when hoisting a container, if the front wheels of the employee's vehicle leave the ground, the container is too heavy and the employee cannot

hoist it. But Moore testified that he had employed the partial hoisting method for downloading a container, that Waste Management had previously asked him to perform this procedure with other containers, that it was common practice at Waste Management to do so, and that Waste Management found the practice acceptable. Shackelford also testified that it was not improper for an employee to hoist a container to estimate its weight. Also, the procedure described in the rule book itself indicates that the proper method for determining if a container is too heavy is to begin to hoist a container, just as Moore did here.

Finally, there is a genuine dispute of material fact as to whether Moore appreciated that the container's weight posed a serious risk of injury. Moore had no way of determining how overweight the container was; he could only estimate based on sight and feel. Even so, his approximations could not be accurate because the weight of the container was far in excess of its appearance as a result of its exposure to the elements for months. Furthermore, Moore testified that he did not foresee that the cable was going to break and that he was going to get hurt.

Therefore, because there are disputed issues of material fact, the district court improperly granted Design-Fab's motion for summary judgment. As a result, we reverse the district court and remand for further proceedings.

## II. Rule 16(b) Scheduling Order

Plaintiffs argue that the district court erred in denying the Moores' motion to modify the Rule 16(b) scheduling order because they made the requisite showing of good cause and because Design-Fab would not have suffered any prejudice as a result of the modification. They further argue that the magistrate judge's basis for denying the motion was factually incorrect because he relied on an incorrect MMI date and that he thus should be reversed.

We review a district court's decision whether to amend a Rule 16(b) scheduling order for abuse of discretion. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (granting motion to amend). A judge may modify a Rule 16(b) scheduling order for "good cause." FED. R. CIV. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

Plaintiffs fail to demonstrate good cause for modification. Before the magistrate judge and the district court, the Moores argued that they were unable to schedule expert evaluations by the deadline as a result of Moore's reaching MMI on September 20, 2012, only 20 days before the deadline of October 9. However, they did not explain why the 20-day window was insufficient time within which to request an extension.

Further, the district court properly observed that the magistrate judge relied on sufficient independent evidence of lack of diligence, despite initially citing the wrong MMI date. The magistrate judge's and the district court's decisions both properly rested on the fact that the Moores did not timely move for modification, despite having ample time between learning they could not meet the deadline and the expiration of the deadline.

Conversely, Design-Fab is able to demonstrate possible prejudice if the modification were granted. It timely disclosed its expert without the benefit of knowing what the Moores' experts would have said. Thus, the Moores were able to rely on Design-Fab's expert in shaping their trial strategy, while Design-Fab lost this right. Further, if the Moores had been granted an extension, Design-Fab would have had to expend more time, money, and resources to rebut the

Moores' newly-disclosed expert evaluations. Consequently, the magistrate judge correctly found that the modification would have unfairly advantaged the Moores at the expense of Design-Fab.

Therefore, the district court did not abuse its discretion by denying the Moores' motion to modify the Rule 16(b) scheduling order. *Andretti*, 426 F.3d at 830. However, because we are reversing the district court's grant of Design-Fab's motion for summary judgment, we suggest that the court consider modifying the scheduling order to accommodate the parties as they proceed to trial.

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's grant of Design-Fab's motion for summary judgment and **REMAND** for further proceedings; and we **AFFIRM** its denial of the motion to modify the Rule 16(b) scheduling order, but suggest that the district court consider independently modifying the scheduling order on remand.