In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3286

HARBOR MOTOR COMPANY, INCORPORATED, d/b/a
HARBOR OLDSMOBILE-GMC TRUCK, an
Indiana Corporation,

Plaintiff-Appellant,

v.

ARNELL CHEVROLET-GEO, INCORPORATED,
an Indiana Corporation, d/b/a ARNELL CHEVROLET,
and POST-TRIBUNE PUBLISHING COMPANY,
INCORPORATED, d/b/a POST-TRIBUNE NEWSPAPER,
an Indiana Corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 97 C 379--Allen Sharp, Judge.

ARGUED APRIL 2, 2001--DECIDED September 17, 2001


  Before RIPPLE, MANION and KANNE, Circuit
Judges.

  RIPPLE, Circuit Judge.  Harbor Motor
Company, Inc. ("Harbor") brought suit
against Arnell Chevrolet-Geo, Inc.
("Arnell") and Post-Tribune Publishing
Company, Inc. ("Post-Tribune"), alleging
copyright infringement. Arnell and the
Post-Tribune tendered to Harbor an offer
of judgment for $20,100, which Harbor
rejected. The case proceeded to trial
and, at the close of Harbor's case-in-
chief, both Arnell and the Post-Tribune
moved for judgment as a matter of law.
The district court granted the motion as
to the Post-Tribune but permitted the
claims against Arnell to go to the jury.
The jury found in favor of Harbor and
awarded Harbor $12,500 in damages.

  The district court then awarded
attorney's fees as follows: (1) the Post-
Tribune received over $104,000 in costs
and attorney's fees as a prevailing party
under the Copyright Act, 17 U.S.C. sec.
101 et seq.; (2) Arnell received more
than $71,000 in costs and attorney's fees
pursuant to Federal Rule of Civil

Procedure 68 because Harbor's $12,500 judgment against Arnell was less than the $20,100 joint offer of judgment; and (3) Harbor's request for costs and attorney's fees was denied. Harbor now appeals both the district court's decision to grant the Post-Tribune's motion for judgment as a matter of law and the court's award of costs and attorney's fees. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings.

I

BACKGROUND

A.

1.

   Harbor and Arnell are competing automobile dealerships located in northwest Indiana. From 1994 to 1997, Harbor conducted more than a dozen tent sales in the parking lot of a SuperK store in Portage, Indiana./1 To advertise its tent sales, Harbor principally relied on newspaper advertising, particularly full-color Sunday ads published in the Post-Tribune newspaper. The design of the ads is disputed and is sketched in brief here.

   Harbor explains that its ads were designed by Gino Burelli, one of its co-owners and operators, with assistance from David Lawson, Harbor's other co-owner. Burelli designed the ads by hand on a piece of paper, then met with Karen Johnson of Lighthouse Media, Harbor's advertising agency. Burelli directed Johnson to adapt his designs to a newspaper-friendly format. Johnson did so using computer software and then delivered the proofs to Burelli for editing before they were submitted to the newspaper for publication. For each tent sale, Burelli took Harbor's previous tent sale advertisement and made changes to the pre-existing text and design. All the ads were similar to one another; each successive ad was "tweaked" to improve upon the earlier ads, although the overall "look" of the ads was preserved. Tr.II at 86 & 117.

   Arnell and the Post-Tribune, however, claim that Johnson, and not Burelli, is

the designer of the advertisements./2 Specifically, for each tent sale, Burelli would take the ad Harbor used for the last sale and draw changes to the pre-existing design. He would then give the ideas to Johnson, who would use computer software to create an advertisement from Burelli's ideas and rough sketches.

2.

In 1997, Harbor conducted a tent sale from June 11-14 and advertised the sale in the Post-Tribune the week of Sunday, June 8. Although Burelli did not copyright the advertisement at the time, Harbor did register the copyright for the June advertisement on August 25, 1997.

Arnell also held a tent sale at the same SuperK location on July 9-12, 1997. Thomas Tenhove, Arnell's sales manager, contacted Peg Bryan, the Post-Tribune sales representative who handled Arnell's advertising, and asked her to duplicate Harbor's ad. Bryan, however, told Tenhove that she could not make an exact copy of the Harbor ad and that changes would have to be made to the ad before it could be published as an Arnell ad. Bryan testified at trial that she thought the changes were necessary to ensure she was "covering" herself and the newspaper while at the same time doing "the job that Arnell wanted." Id. at 156.

Bryan then gave a copy of the Harbor ad--complete with Tenhove's handwritten alterations--to Kim Piazza, the newspaper's graphic designer, and told her that Arnell wanted its ad to look like the Harbor copy. Using the Harbor ad, Piazza created a "layout" for the Arnell version. This layout was a copy of the Harbor ad, with the following major changes: Arnell's logo instead of Harbor's appeared at the top; information stating that sales would benefit the Boys & Girls Club of Porter County was moved from the middle of the advertisement to the bottom of the page; and a notation was added that there would be a "Free Carnival Cruise with Purchase." The ad ran in the Post-Tribune's Sunday edition on July 6, 1997.

Burelli saw Arnell's ad in the Post-Tribune. At first glance, he thought that the ad was Harbor's own for an upcoming July tent sale, and he called Johnson to

complain that the ad had been run on the wrong day. After Burelli and Johnson discovered that the ad was for Arnell, Johnson called Bryan and other Post-Tribune employees and demanded that the newspaper discontinue the ad. Bryan and Piazza then created a new and different ad for Arnell to advertise its tent sales.

Harbor held another tent sale in July 1997. It claims that, even though it conducted the sale in the same manner as its prior sales, it sold approximately sixteen fewer cars than it had averaged in previous sales, with a resulting loss of approximately $21,000./3

B.

Harbor filed suit in late 1997, claiming (1) that Arnell and the Post-Tribune infringed upon its copyright, in violation of 17 U.S.C. secs. 412 and 501-505; and (2) that Arnell intentionally interfered with its prospective business advantage, a tort under Indiana law.

During pretrial proceedings, Arnell tendered an offer of judgment to Harbor for $2,500, and the Post-Tribune tendered a separate offer of judgment for $7,500. Harbor did not accept either offer. Arnell and the Post-Tribune then tendered a joint offer of judgment to Harbor for $20,100, an unapportioned lump-sum offer that did not specify how much of the offer applied to each defendant. The offer provided that "the total amount of this offer of judgment [was to be] collective against both defendants, and not to be construed as entitling [Harbor] to the lump sum stated herein against one defendant or the other individually." R.142, Ex.J at 1-2. The offer further specified that the $20,100 was to be "inclusive of attorneys' fees and costs up to the date of acceptance of this offer" and that acceptance would "preclude any subsequent claim for costs or attorney[']s fees by plaintiff." Id. at 1-2. Harbor rejected this joint offer, and the case was tried to a jury.

At the close of Harbor's case-in-chief, both Arnell and the Post-Tribune moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). They argued that Harbor did not own the

copyright in the advertisement and that they had not willfully infringed Harbor's copyright. Arnell also moved for judgment as a matter of law on the intentional interference with business advantage claim.

The district court granted Arnell's motion on the state-law claim and granted both the Post-Tribune's and Arnell's motions with respect to willful infringement./4 The court also dismissed the Post-Tribune from the case entirely, ruling that:

I must confess to you in complete candor--and I am well aware that the First Amendment has not been argued here. It is a rare newspaper case that that isn't argued, but it hasn't been.

But there are some values involved that I think are implicit in the way in which newspapers should or are supposed to act--and granted that they, like many other of the powerful forces in our society, are far from perfect--I have a lot of problem--and I am going to lay this out with great candor--I have a great deal of problem, especially with the one witness, of imposing an obligation on this newspaper under the circumstances of this case to hold them responsible for any improper dealing with regard to the copyright involved.

I am going to let them out. I am going to grant their motion for directed verdict. . . .

So I am not going to--I am excusing the newspaper on different grounds than the validity of the copyright.

Tr.II at 280-81.

The jury subsequently returned a verdict in Harbor's favor against Arnell on Harbor's copyright claim and awarded Harbor statutory damages of $12,500. Each party then filed motions to recover costs and attorney's fees; the district court referred the motions to a magistrate judge. The magistrate judge recommended (1) that the Post-Tribune be awarded over $104,000 in costs and attorney's fees as a prevailing party under the Copyright Act; (2) that Arnell be awarded more than $71,000 in costs and attorney's fees, finding that Federal Rule of Civil

Procedure 68 required it to do so because Harbor's $12,500 judgment against Arnell was less than the $20,100 joint offer of judgment; and (3) that Harbor's request for costs and attorney's fees as the prevailing party be denied. The district court adopted the magistrate judge's recommendation in its entirety, and Harbor now appeals.

II

ANALYSIS

A.  Judgment as a Matter of Law for the Post-Tribune

Harbor contends that the district court erroneously granted the Post-Tribune's motion for judgment as a matter of law because it improperly determined that the First Amendment shielded the newspaper from liability. The Post-Tribune, in contrast, argues (1) that Harbor only sued the Post-Tribune for contributory, and not direct, infringement, and a prima facie case of contributory infringement was not made out; and (2) that the district court did not base its ruling on First Amendment grounds.

We first must determine the cause of action on appeal. Despite the Post-Tribune's assertion to the contrary in its brief, we believe that all parties proceeded in the district court under a direct infringement claim. In both its motion for summary judgment and its trial brief, for example, the Post-Tribune centered its analysis on a direct infringement claim and made no mention of contributory infringement. Likewise, the Post-Tribune did not refer to contributory infringement in its motion for judgment as a matter of law. Harbor also based its pleadings on a direct infringement claim; in paragraph one of its complaint, it alleged copyright infringement under 17 U.S.C. secs. 412, 501-505, all relating to direct infringement./5 The Post-Tribune points to various pieces of the district court's language in an effort to support its theory that the court granted its motion on a contributory infringement basis, but we are not persuaded by those citations. The cited references do not relate to contributory infringement but instead are taken from the court's discussion of Arnell's motion on the willful

infringement claim. Accordingly, we shall examine the elements of direct infringement to determine whether the Post-Tribune's case should have been submitted to the jury.

To make out a prima facie claim of direct infringement, Harbor must show (1) that it owned a valid copyright in the advertisement and (2) that the Post-Tribune copied constituent elements of the work that were original. See Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 507 (7th Cir. 1994) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)); see also 3 Melville B. Nimmer, Nimmer on Copyright, sec. 13.01[A], at 13-6 (1993). Harbor contends that it made out a prima facie case against the Post-Tribune, evidenced by the jury's decision in favor of Harbor against Arnell on the same evidence. We agree.

As an initial matter, we review de novo a district court's grant of judgment as a matter of law. See Bruso v. United Airlines, Inc., 239 F.3d 848, 857 (7th Cir. 2001). We ask whether the evidence presented, combined with the reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed. See Lane v. Hardee's Food Sys. Inc., 184 F.3d 705, 707 (7th Cir. 1999). We shall reverse the judgment "only if enough evidence exists that might sustain a verdict for the nonmoving party." Id. (quoting Continental Bank N.A. v. Modansky, 997 F.2d 309, 312 (7th Cir. 1993)). In deciding this question, we may not substitute our view of contested evidence for the jury's. See Place v. Abbott Labs., 215 F.3d 803, 809 (7th Cir. 2000), cert. denied, 121 S. Ct. 768 (2001).

We conclude that the district court's decision to grant the Post-Tribune's motion for judgment as a matter of law was in error. The court in granting the Post-Tribune's motion indicated only that it did not believe that liability could be imposed on the Post-Tribune consistent with the First Amendment because "there are some values involved that I think are implicit in the way in which newspapers should or are supposed to act." Tr.II at 280./6 The court explained that it had

the "private feeling" that "this is not the kind of case that the copyright act was really all about." Id. at 281. Nowhere in its ruling did the district court articulate a basis, grounded in the Copyright Act, for granting the Post-Tribune's motion for judgment as a matter of law. It simply noted that it was "excusing the newspaper on different grounds than the validity of the copyright." Id.

In our view, the evidence, viewed in the light most favorable to Harbor, could support a verdict in its favor on direct infringement grounds. First, the jury verdict against Arnell demonstrates (1) that Harbor owned a valid copyright in the advertisement and (2) that Arnell infringed Harbor's copyright. Harbor asserts the same ownership rights in the copyright against the Post-Tribune/7 and appears to have an even stronger case because it was the newspaper that copied the advertisement. The Post-Tribune's own ad representative and graphic designer created the offending ad, and the paper published it. Because enough evidence exists to sustain a verdict for Harbor, we conclude that the district court erred in granting judgment as a matter of law to the Post-Tribune on a direct infringe ment claim.

Therefore, the judgment as a matter of law in favor of the Post-Tribune is reversed. The order granting the Post-Tribune costs and attorney's fees as a prevailing party is likewise reversed./8

B.  Rule 68

  1.  Prevailing Party

Arnell and the Post-Tribune made a joint offer of judgment to Harbor in the amount of $20,100. Harbor rejected the offer and, at trial, obtained a judgment against Arnell for $12,500. The district court then permitted Arnell to recover its fees and costs pursuant to Federal Rule of Civil Procedure 68, a decision Harbor contends was in error. Specifically, because Arnell was not a prevailing party under the Copyright Act, Harbor claims that Arnell could not receive the fees under Rule 68's mandatory fee-shifting provision. Arnell argues in response that it was not

required to be a prevailing party to recover its attorney's fees.

Rule 68 permits a defendant to serve on a plaintiff "an offer to allow judgment to be taken against the [defendant] for the money or property or to the effect specified in the offer." Fed. R. Civ. P. 68. If the plaintiff does not accept the offer of judgment within ten days and then obtains a judgment against the defendant that is less favorable than the offer, the plaintiff "must pay the costs incurred after the making of the offer." Id. Thus, the plaintiff is precluded from recovering his costs incurred after the making of the offer. See Marek v. Chesny, 473 U.S. 1, 10 (1985)./9 Rule 68 also requires the plaintiff to pay any costs the defendant incurs after making the offer if the plaintiff's judgment is less favorable than the offer. See Gavoni v. Dobbs House, Inc., 164 F.3d 1071, 1075 (7th Cir. 1999). We review the district court's underlying factual findings for clear error, but to the extent a party's entitlement to costs rests on an interpretation of Rule 68, we review the district court's legal conclusions de novo. See id.

Although Rule 68 by its terms only applies to costs, the Supreme Court has held that attorney's fees are included within the definition of "costs" for purposes of Rule 68 when the underlying statute includes attorney's fees in its definition of costs. See Marek, 473 U.S. at 9. Section 505 of the Copyright Act defines costs to include attorney's fees, but only the prevailing party is entitled to their award. See 17 U.S.C. sec. 505 ("Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). This appeal thus asks us to determine whether Arnell must be a prevailing party under the Copyright Act in order to recover attorney's fees pursuant to Rule 68.

Courts that have addressed whether a non-prevailing party can nevertheless obtain attorney's fees under Rule 68 have expressed differing views. In Crossman v. Marcoccio, 806 F.2d 329 (1st Cir. 1986), cert. denied, 481 U.S. 1029 (1987), the First Circuit held that a losing defendant could not recover post-offer

attorney's fees because it was not the prevailing party. See Crossman, 806 F.2d at 334. ("Although appellants' attorney's fees were 'properly awardable' costs under section 1988, appellees' attorney's fees were not. The statute awards costs only to a 'prevailing party.'") (emphasis in original); see also O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1120 (8th Cir. 1989)./10

The First Circuit in Crossman rejected the same argument that Arnell makes here, explaining that the effort to dismiss the "prevailing party" language in Marek

distorts the law governing the relationship between Rule 68 and [the substantive statute] by ignoring the two crucial words that serve to qualify the holding of the Marek case. Marek states that "the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." . . . The Court stresses the importance of the two emphasized words by repeating them in the next sentence of the opinion: "In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.'"

Crossman, 806 F.2d at 333 (emphasis in original).

The Eleventh Circuit, however, has determined that a Rule 68 award of costs includes attorney's fees even if the defendant is not the prevailing party. See Jordan v. Time, Inc., 111 F.3d 102, 105 (11th Cir. 1997). There, the courtdetermined that the plaintiff was required to pay the defendant's costs incurred after the making of the offer, simply stating that "Rule 68 'costs' include attorneys' fees when the underlying statute so prescribes. The Copyright Act so specifies." Id./11 The court in Jordan, however, did not confront squarely the requirement in section 505 of the Copyright Act that a party seeking attorney's fees must be a prevailing party; the Eleventh Circuit read Marek to mean that the underlying statute, the Copyright Act, simply must define costs to include attorney's fees for the fees to be properly awardable under Rule 68. See id.

We agree with the analysis in Crossman

and, therefore, hold that only prevailing parties can receive attorney's fees pursuant to Rule 68. Our conclusion is compatible with the language in Marek that ties the award of Rule 68 fees to only those costs that are properly awardable under the substantive statute at issue. See Marek, 473 U.S. at 9 (concluding that the term "costs" in Rule 68 was "intended to refer to all costs properly awardable under the relevant substantive statute or other authority. . . . Thus, absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."). The authority holding to the contrary does not, in our view, adequately address the Copyright Act's mandate that only the prevailing party is permitted to recover its attorney's fees.

A prior case from this circuit, Poteete v. Capital Engineering, Inc., 185 F.3d 804 (7th Cir. 1999), supports our analysis. In that case, dealing with ERISA, we held that the defendants were not entitled to attorney's fees under Rule 68. See Poteete, 185 F.3d at 807. "The statutes and common law principles that sometimes entitle a party to recover his attorneys' fees limit that entitlement to prevailing parties . . ., and any defendant who is entitled to invoke Rule 68 is by definition not a prevailing party." Id. at 807-08. Thus, Poteete indicates that defendants who are not prevailing parties cannot recover attorney's fees under Rule 68. This conclusion is applicable to other statutes, including the Copyright Act.

In sum, we conclude that a non-prevailing party cannot, under the Copyright Act, receive post-offer attorney's fees pursuant to Rule 68.

2. Apportionment

Harbor also argues that the $20,100 joint offer of judgment from the Post-Tribune and Arnell was not comparable to the judgment obtained at trial only against Arnell. Thus, Harbor contends, Rule 68's cost-shifting provision was not triggered, and Harbor is not responsible for Arnell's fees and costs. Arnell maintains, however, that multiple defendants may make a joint offer of

judgment and that the two figures in this case--the amount of the judgment and the settlement offer--are easily comparable.

Generally, plaintiffs face "serious consequences in either accepting or rejecting a Rule 68 offer." Gavoni, 164 F.3d at 1076. As we indicated earlier, a judgment less favorable than the offer requires that a plaintiff pay the defendant's post-offer costs and forego entitlement to its own attorney's fees. There must, therefore, "be a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer." Id. We have explained that an

ambiguous offer places the plaintiff in an uncomfortable position. Not knowing the actual value of the offer, he can't make an intelligent choice whether to accept it--and there are consequences either way. For unlike the case of an ordinary contract offer, the offeree cannot reject it without legal consequences, since if he rejects it and then doesn't do better at trial he has to pay the defendant's post-offer costs.

Nordby v. Anchor Hocking Packaging Co., 199 F.3d 390, 392 (7th Cir. 1999).

In this case, the parties dispute whether the baseline was sufficiently clear. Harbor contends that it was not; the joint offer was from both defendants, but unapportioned, with no indication as to the amount for which each defendant was liable. Arnell, however, claims that Harbor possessed all the information it needed to decide whether to accept the offer.

Ambiguity in an offer of judgment is to be construed against the defendant that makes the offer; a "plaintiff should not be left in the position of guessing what a court will later hold the offer means." Webb v. James, 147 F.3d 617, 623 (7th Cir. 1998). Accordingly, the burden is on the defendant-offeror to demonstrate that its "offer was more favorable than the judgment and that the mandatory cost-shifting provision was therefore triggered." Gavoni, 164 F.3d at 1075-76. The defendant "bear[s] the burden of precision." Id. at 1076 n.1. He should "state his intentions clearly, and any failure to do so will be at his peril."

Id. at 1076 (quoting Chambers v. Manning, 169 F.R.D. 5, 8 (D. Conn. 1996)).

This circuit--and others--already have held that various joint offers do not trigger the fee-shifting provisions of Rule 68. In Gavoni, 164 F.3d at 1077, for example, we determined that an unapportioned offer given to multiple plaintiffs did not permit the plaintiffs to "independently evaluate" the offer. More specifically, an unapportioned offer of $10,000 to three plaintiffs could not be compared to the judgment finally obtained; the jury returned a verdict in favor of each plaintiff individually in the amounts of $2,000, $2,000, and $2,500. See id. at 1076-77. Because it was impossible to tell whether the amount each plaintiff received from the jury was less favorable than what each would have received from the unapportioned $10,000 offer divided among them in an undetermined manner, we determined that the offer of judgment had no effect. See id. at 1076.

In Johnston v. Penrod Drilling Co., 803 F.2d 867, 870 (5th Cir. 1986), the Fifth Circuit similarly concluded that Rule 68 did not apply to an unapportioned joint offer from two defendants, explaining that the "figure represented by the joint offer of [the two defendants] on the one hand and the dollar judgment obtained only against [one defendant] on the other are not comparable figures." In that case, however, the plaintiff settled with one of the two defendants prior to trial. The court found that the judgments were not comparable because the settlement may have had an effect on the damage award. See Johnston, 803 F.2d at 870. "The character and dynamics of a trial often are drastically changed when one or more parties are dismissed." Id. If the jury had found both defendants at fault, it likely "would have reduced the extent of [the plaintiff's] contributory negligence." Id.

Here, we see no way to compare the $20,100 offer of judgment made jointly by the Post-Tribune and Arnell with the $12,500 judgment that Harbor obtained against Arnell alone. For example, did the parties intend to apportion the offer equally? Or did they envision another division, one more commensurate with their varying degrees of responsibility?

The Post-Tribune's initial, individual offer of judgment for $7,500 was three times that of Arnell's $2,500 offer of judgment. As we noted in Gavoni, "varied constructions of the single offer only underscore its fatal problem: imprecision." Gavoni, 164 F.3d at 1076.

Arnell submits that Harbor had all the information it needed to make an informed decision to accept the offer. More specifically, Arnell maintains that Harbor knew that the maximum recovery available to it on the single claim of non-willful copyright infringement was $20,000, a hundred dollars less than the offer of judgment./12 However, this argument does not take into account that, at the time the offer of judgment was made, Harbor was pursuing a claim for willful infringement, which at the time carried a maximum statutory recovery of $100,000. The willful infringement claim was not dismissed until after Harbor presented its case-in-chief at trial, well after the expiration of the ten days Harbor had in which to accept the offer. The Post-Tribune, notably, was the entity that had designed and published the infringing ad.

In conclusion, courts require "easily comparable sums," Gavoni, 164 F.3d at 1076, and these were not. The ambiguous nature of the offer of judgment is another reason why Arnell should not have received a fee award under the auspices of Rule 68. An offeree must know what is being offered before being held responsible for refusing the offer.

We need not go so far as to conclude, however, that Rule 68 always requires an exact delineation of the manner in which damages are to be apportioned among multiple parties. There might be circumstances where it would be clear to the district court how a settlement is to be shared among offerors and/or offerees. This, however, is not such a case./13

Conclusion

The order granting judgment as a matter of law to the Post-Tribune is reversed; therefore, the order of attorney's fees to the Post-Tribune as a prevailing party also must be reversed. The order awarding Arnell costs and attorney's fees under Rule 68 is reversed. The order denying Harbor its costs and attorney's fees is

vacated. The case is remanded to the district court for further proceedings consistent with this opinion. Circuit Rule 36 shall apply. Harbor may recover its costs in this court.

IT IS SO ORDERED

FOOTNOTES

/1 A tent sale is a commonly used promotional device where an auto dealer sells cars from a location other than its dealership.

/2 Arnell and the Post-Tribune point out that Gino Burelli and Karen Johnson amended their deposition answers by way of errata sheet to reflect their contention that Burelli, and not Johnson, designed the tent sale ads.

/3 In August 1997, Harbor filed a copyright application for its June 1997 tent sale advertisement. On the application, Harbor is listed as the owner of a visual art entitled "Harbor Tent Sale," a work made for hire. Harbor did not seek copyright registration for any of its other tent sale ads.

/4 The district court's decision to grant a judgment as a matter of law on Harbor's claim of willful infringement reduced Harbor's potential statutory damages from $100,000 (the maximum statutory damages for willful infringement) to $20,000 (the maximum for non-willful infringement). See 17 U.S.C. secs. 504(c)(1) & (2). We note that a recent change to the statute permits the recovery of $150,000 for willful infringement and $30,000 for non-willful infringement.

/5 The only mention of contributory infringement is in paragraph 21 of the complaint, which indicated that the "conduct of the Post-Tribune constitutes contributory infringement of Harbor's copyright in the Harbor Advertisement." R.5 at 6.

/6 The Post-Tribune never argued that its publication of the Arnell advertisement was protected by the First Amendment.

/7 The Post-Tribune attacks the validity of Harbor's copyright in several respects, arguing on appeal that Harbor is not the owner of the copyright in its ad, that the ad is a derivative work, that the ad published by the Post-Tribune did not infringe any copyrightable elements of Harbor's ad, that the Post-Tribune's publication of the ad constituted fair use, and that any infringement was de minimus and, therefore, not actionable. Because the jury already decided these claims in Harbor's favor when it found against Arnell on the copyright infringement claim, we shall not

undertake here an in-depth discussion of these aspects of copyright law.

/8 To the extent that the order denying Harbor attorney's fees as a prevailing party was denied because of the grant of a judgment as a matter of law to the Post-Tribune, that order must be vacated.

/9 In Marek v. Chesny, 473 U.S. 1 (1985), the Supreme Court confronted only the question of whether a party's own attorney's fees could be shifted back to it under Rule 68. See id. at 9 ("Since Congress expressly included attorney's fees as 'costs' available to a plaintiff in a sec. 1983 suit, such fees are subject to the cost-shifting provision of Rule 68"); see also Crossman v. Marcoccio, 806 F.2d 329, 333 (1st Cir. 1986) ("The Marek Court, however, did not reach the precise issue before us today [whether a defendant can recover attorney's fees where he is not the prevailing party, but the plaintiff recovered less at trial than what the defendant offered in settlement] because the defendants in that case failed to appeal the portion of the district court's order denying their request for post-offer attorney's fees.").

/10 See also Jones v. Fleetwood Motor Homes, 127 F. Supp.2d 958, 971 & n.12 (N.D. Ill. 2000); Domanski v. Funtime, Inc., 149 F.R.D. 556, 557 (N.D. Ohio 1993); 12 Wright & Miller, Federal Practice & Procedure, 3006.2, at 132 (2d ed. 1997) ("But the Supreme Court was careful to specify in Marek that only 'properly awardable' costs were to be awarded to defendants, and the lower courts have properly held that this means that civil-rights defendants can recover their fees as a part of costs under Rule 68 only if they can satisfy the otherwise-applicable standard for recovery by defendants.").

/11 See also Lucas v. Wild Dunes Real Estate, Inc., 197 F.R.D. 172, 175-77 (D.S.C. 2000) (same, citing Jordan).

/12 Arnell also submits that Harbor knew from the beginning that the willful infringement claim had no merit. We decline to engage in such speculation.

/13 The denial of attorney's fees to Harbor against Arnell appears to have been predicated on the award of costs and attorney's fees to Arnell under Rule 68. Since the Rule 68 ruling of the district court cannot stand, we also must vacate the court's denial of attorney's fees to Harbor.