# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3833
_____

Allen Beaulieu, individually doing business as Allen Beaulieu Photography

*Plaintiff - Appellant*

v.

Clint Stockwell, an individual; Thomas Martin Crouse, an individual; Charles Willard Sanvik, an individual, also known as Chuck; Studio 1124, LLC, a Minnesota limited liability company; Does, 3 through 7

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 16, 2022
Filed: August 30, 2022
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

BENTON, Circuit Judge.

Allen Beaulieu, Prince's photographer, claims his former collaborators and a potential investor in a book project kept his photographs and used them without

permission. He sued. The district court[1] granted summary judgment on all claims. Beaulieu appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Allen Beaulieu was the artist Prince's personal photographer from 1979 to 1984. He shot album covers and three world tours for him. In 1984 Beaulieu registered a copyright for his original photographs.

In 2014, Beaulieu began working on a book of the photos. He hired Thomas Martin Crouse, a writer and publisher, to assist with the stories and captions. In 2015, Clint Stockwell joined the project, scanning and storing digital copies of the photos. Stockwell was the sole owner of Studio 1124, a limited liability company.

In April 2015, Beaulieu and Stockwell entered into a contract. In May and June, Beaulieu and Crouse entered into two more contracts.

In April 2016, Prince died, leading the collaborators to expect increased interest in Beaulieu's photos. Stockwell, soliciting investors, sent an MP4 slideshow and press release of Beaulieu's photos to about a dozen people, including Charles W. Sanvik. In May 2016, Beaulieu gave an unknown, uncatalogued number of photos to Stockwell to digitize and expand the proposed book. But their collaboration fell apart. Beaulieu demanded his photos back. His attorney retrieved some of them from Stockwell's home. Beaulieu had them for three months before giving them back to his attorney. They did not make an inventory of the photos at any time.

There are 4,015 copyrighted photos in Beaulieu's collection, of which 567 are 2 ¼". According to the complaint, Beaulieu provided Stockwell "all of his Photos," which totaled "approximately 3,000." In his deposition he claimed Stockwell still had 5,200 out of 6,000 photos. But at the same time, he claimed he got back 1,500,

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

not 800. During discovery, Beaulieu revealed he provided 3,198 photos to the Minnesota Historical Society in February and July 2018 for his book it ultimately published. He also admitted in his deposition to finding an envelope with transparencies from "60 different photo sessions . . . some had multiple sheets" that he left by his computer. At summary judgment, 18 months into litigation, Beaulieu had not finished inventorying the photos in his possession.

A forensic examination of at least 26 electronic devices belonging to Stockwell, Crouse, the company, and Sanvik did not uncover any evidence of "unlawful access, transmission and/or copying of Plaintiff's data, as alleged in the complaint."

The district court granted summary judgment to all defendants. Beaulieu appeals the judgment and the costs awarded to Sanvik.

"This court reviews de novo the grant of summary judgment." *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 545 (8th Cir. 2020). Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. This court must view the evidence and all reasonable inferences most favorably to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

"The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

I.

Beaulieu sued Stockwell, his company, Crouse, and Sandvik for conversion. "To constitute conversion, one must exercise dominion over property that is inconsistent with the owner's right to the property, or some act must be done that . . . deprives the owner of possession permanently or for an indefinite length of time." *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn. Ct. App. 1986). To prove conversion, a plaintiff must show: (1) a "property interest" and (2) that the defendant "deprives the plaintiff of that interest." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008), *quoting Olson v. Moorhead Country Club*, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997).

Physical photos are "tangible personal property" under Minnesota law. *See, e.g.*, *Sprint Spectrum LP v. Comm'r of Revenue*, 676 N.W.2d 656, 659 (Minn. 2004). Intellectual property and digital copies of photos are not tangible property and cannot be the subject of conversion claims. *See, e.g.*, *Bloom v. Hennepin County*, 783 F. Supp. 418, 440-41 (D. Minn. 1992) (declining to extend the tort of conversion to intellectual property, which would contravene Minnesota precedent), *citing H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531 (8th Cir. 1989).

Beaulieu presents two possible theories of conversion. The first is an ongoing conversion, that the collaborators still have his photos. The second is a technical conversion, that the collaborators kept his photos for several months after he demanded their return. Beaulieu made his first demand for their return in either June or August 2016 (he alleges different dates in his complaint and on appeal. His attorney retrieved them in October).

For his ongoing conversion theory, Beaulieu never identifies the photos he alleges Stockwell and Crouse have. He describes an elaborate system for counting how many photos he took of Prince based on the number of film rolls he brought with him to each shoot. This method is irrelevant to the number of photos he gave Stockwell and Crouse three decades later or the number, if any, they kept after

-4-

Beaulieu's lawyer tried to retrieve them. Beaulieu has never provided a complete inventory of the photos for any time period relevant to this lawsuit: how many he had in 2016, how many he gave to Stockwell and Crouse, how many his attorney retrieved, or how many he later gave back to his attorney. "A [claim] founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir. 2003). Beaulieu provides no evidence whatsoever that Stockwell or Crouse still have any of his photos, or that he ever gave them any of those he now claims are missing. He has not given a firm inventory of how many he believes are missing. An extensive forensic protocol did not identify any of his materials in their possession or any wrongful use. Beaulieu provides nothing more than speculation and suspicion against Stockwell and Crouse.

While Beaulieu has a method for counting the total number of his photos, this is not sufficient to substantiate his allegations. He cites *Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 840 (8th Cir. 1988), where the initial amount of grain loaded was measured by trucks weighed on a scale. Here, by contrast, Beaulieu provides no measure of how many photographs he gave Stockwell and Crouse. He also cites *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003), where lay witnesses testified, based on experience, about weights and quantities of methamphetamine a defendant sold. That is perhaps analogous to Beaulieu describing how many photos he initially took, but irrelevant to his failure to enumerate how many photos he gave his collaborators decades later. The number of photos he took in the 1980s is not an issue in this case.

Beaulieu also accuses Sanvik of conspiracy to convert. He alleged in his complaint that: "Sanvik still possesses Plaintiff's Photos and/or copies made from them." But Beaulieu produced no evidence that Sanvik ever possessed any of his physical photos, or used or conspired to use them in a way that interfered with his right of possession. Beaulieu admitted as much in his deposition:

-5-

Q: All right. Tell me what facts you have, Mr. Beaulieu, that Mr. Sanvik has possession of any of your Prince photographic material?
A: Well, the – Clint took my photographs so I have no – I mean he could have gave them to Sanvik very – I have no idea.
Q: You don't have any evidence that any photographs were ever given to Mr. Sanvik. Right?
A: No. They were out of my possession.
Q: Right. So you don't know?
A: I don't know.

Beaulieu also accuses Sanvik of unlawful use due to "suspicious circumstances," which he finds in one line Sanvik emailed to Stockwell. Sanvik wrote: "These are times when you don't give up! However, if you have nothing in writing it may be the only alternative." That line alone, even read most favorably for Beaulieu, does not support any genuine issue for trial. Beaulieu presents no evidence that Stockwell and Crouse kept any of his photos after October 2016 or that Sanvik materially encouraged them to do so. And again, the forensic investigation uncovered no misuse by Sanvik of Beaulieu's photos.

For the first time, Beaulieu raises on appeal his second conversion theory, that Stockwell and Crouse—conspiring with Sanvik—converted his photographs by keeping them between August and October 2016. This court "consider[s] newly raised issues only if they are purely legal and no additional factual development is necessary, or where manifest injustice would otherwise result." *Orion Fin. Corp. of S. Dakota v. American Foods Grp., Inc.*, 281 F.3d 733, 740 (8th Cir. 2002). Beaulieu explicitly told the district court he was bringing a claim only "for the 2 ¼" photographs that have *not* been returned," and that he was "not claiming his 35mm slides, *which were returned*, and are now being used to create a book, are the basis of the ongoing conversion claims." At the summary judgment hearing, his counsel explained: "we're not going to make it a part of the case as to the 35 millimeters" (which Beaulieu admits were returned in October) but "we are focused for the purposes of trial on what two-and-a-quarters . . . that haven't been returned, are

missing." Beaulieu expressly told the district court he was not pursuing a claim about conversion occurring from August to October, so this court will not consider it now.

## II.

Beaulieu brought copyright claims against Stockwell and his company.[2] To prevail on a copyright infringement claim, a plaintiff must prove ownership of a valid copyright and that the opposing party copied original elements of the work. ***Mulcahy v. Cheetah Learning LLC***, 386 F.3d 849, 852 (8th Cir. 2004). Beaulieu held the copyright to his photos.

The district court found Stockwell had an implied license to create and distribute the press release email with the slideshow. "Proof of the existence of an implied license is an affirmative defense to a copyright infringement claim." ***Evert Software, Inc. v. Extreme Recoveries, Inc.***, 2001 WL 1640116, at *3 (D. Minn. 2001), *citing **I.A.E., Inc., v. Shaver***, 74 F.3d 768, 776 (7th Cir. 1996). Courts may find a nonexclusive implied license where: "(1) a person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work." ***Id***. "[U]nlike an exclusive license, an authorization can be given orally or implied from conduct." ***Pinkham v. Sara Lee Corp.***, 983 F.2d 824, 831 (8th Cir. 1992).

The written contracts between the collaborators are not limited to a book. They included provisions for "promotion" and "commercial and merchandising rights subject to Author's approval." In the April 2015 contract, Stockwell agreed

---

[2]Despite his arguments on appeal, Beaulieu did not bring a copyright claim against Crouse. The district court did not address it at summary judgment. The claims against Crouse were for conversion, unjust enrichment, tortious interference, and injunctive relief. This court declines to consider the unpled copyright claim against Crouse. *See **Orion Fin. Corp.***, 281 F.3d at 740.

that "The Production Team shall use digital files for production of The Work only, which may include some promotional and marketing uses at a later time, to be approved by all members of the Production Team."

By several emails, Beaulieu was informed of marketing plans for the project. In one, Crouse said he was working with Stockwell on "deciding which foot to put forward" on social media, inviting Beaulieu to view the social media pages through links on the website. Crouse emailed Beaulieu a copy of the slideshow and press release along with the list of potential contacts, stating: "This is a foundation of all our marketing ideas going forward. It stands as a decent summary of everything we've discussed so far and is prepped to be filled with all kinds of information as we continue to build this project." Beaulieu did not object to the plans memorialized in the emails. Instead, he requested Crouse contact more publishers on his behalf. Crouse replied: "Confirmed: e-mail sent to Rolland Hall with press release, clip, and my information."

Beaulieu, Crouse, and Stockwell were working together to design, publish, and promote a book. Crouse's press-release email advanced that joint project. Whether Beaulieu thought it was a bad business idea is outside the reach of a copyright infringement claim. Beaulieu received several emails (which he failed to produce initially) showing he was aware of and did not object to the marketing plan, including several with the slideshow attached. His collaborators made no attempt to hide it from him. They sent it to him and distributed it with Beaulieu expressly credited as the photographer. There is no evidence that Stockwell sent the slideshow or any other version of Beaulieu's photos after the project fell apart. According to the record, any use of the photographs was to promote the book they were working on together. Beaulieu's silence, coupled with continued and normal interactions between him and the collaborators, implied his approval of the marketing plan and the corresponding distribution of his images, and thus showed an implied license.

## III.

Beaulieu brought a claim for tortious interference against Stockwell, his company, Crouse, and Sanvik. A claim for tortious interference with economic advantage under Minnesota law must satisfy five elements: "(1) the existence of a reasonable expectation of economic advantage belonging to the plaintiff; (2) the defendant's knowledge of that expectation; (3) the defendant's wrongful interference with that expectation; (4) a reasonable probability that the plaintiff would have realized the expectation absent the defendant's conduct; and (5) damages." *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 351 F. Supp. 3d 1187, 1214 (D. Minn. 2018), *aff'd*, 962 F.3d 1015 (8th Cir. 2020). A party is liable for tortious interference with economic advantage only if "the actor's conduct was improper." *Id.* at 1214, *citing Fox Sports Net N., LLC v. Minn. Twins P'ship*, 319 F.3d 329, 337 (8th Cir. 2003). "Improper" here means any "wrongful act recognized by statute or the common law." *Harman v. Heartland Food Co.*, 614 N.W.2d 236, 241 (Minn. Ct. App. 2000). Because Stockwell, his company, Crouse, and Sanvik prevailed in showing there was no issue of material fact about the conversion claim or the copyright claim, they also prevail on the tortious interference claim because there is no underlying improper conduct.

## IV.

The district court awarded costs to Sanvik. Unless a federal statute, the federal rules, or a court order provides otherwise, "costs—other than attorney's fees—should be allowed to the prevailing party." **Fed. R. Civ. P. 54(d)(1)**. The court has "substantial discretion" in awarding costs to a prevailing party. *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). Beaulieu produces nothing showing an abuse of discretion. In fact, the district court reduced the award from the amount Sanvik requested. The district court did not abuse its discretion in awarding the costs to Sanvik.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____