# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-3623

_____

Laney Marie Griner

*Plaintiff - Appellee*

Sam Griner

*Plaintiff*

v.

Steven Arnold King

*Defendant*

King for Congress

*Defendant - Appellant*

_____

No. 23-2117

_____

Laney Marie Griner; Sam Griner

*Plaintiffs - Appellees*

v.

Steven Arnold King; King for Congress

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: March 12, 2024
Filed: June 7, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

BENTON, Circuit Judge.

The King for Congress Committee posted a meme—a humorous online image—asking supporters of the Congressman to "FUND OUR MEMES!!!" Laney M. Griner, the owner of the copyright to the meme's template photo, sued the Congressman and the Committee for copyright infringement. A jury found the Committee, but not the Congressman, liable for copyright infringement, awarding Griner $750, the statutory minimum. Both parties moved for costs and attorney's fees. The district court[1] granted-in-part and denied-in-part costs to both parties, but denied all attorney's fees. The Congressman and the Committee (collectively, the Defendants) appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In 2007, Laney Griner took a photo of her then 11-month-old son (Sam) on the beach. That photo went viral, becoming one of the first (and most popular) internet memes, known as "Success Kid," with billions of uses. A meme is "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." Meme, **Merriam–**

_____

[1]The Honorable C.J. Williams, Chief United States District Judge for the Northern District of Iowa.

-2-

**Webster Online Dictionary**, available at http://www.merriam-webster.com/dictionary/meme (last accessed May 19, 2024).



In 2012, Griner registered the copyright in the Success Kid template with the United States Copyright Office. Using this copyright, she licensed the template to many companies—including Virgin Mobile, Vitamin Water, Microsoft, and Coca-Cola—that used versions of it in advertisements.

In 2020, the Committee posted a version of the meme on its website, Facebook page, and Twitter account (among other places). This version of the meme placed the Success Kid in front of the United States Capitol, declaring "FUND OUR MEMES!!!" The post asked viewers to "please click the link below and throw us a few dollars to make sure the memes keep flowing and the Lefties stay triggered."

---

[2]The original photo by Laney Griner of her son, commonly known as "Success Kid." *See* Rebecca Macatee, *Boy From "Success Kid" Meme Is Now 8, Fundraising for His Dad's Kidney Transplant*, **E! News** (Apr. 15, 2015) https://www.eonline.com/news/646577/boy-from-success-kid-meme-is-now-8-fundraising-for-his-dad-s-kidney-transplant (last accessed May 31, 2024) (containing this image).

The link connected users to a donation page. The Defendants never sought or received permission to use the Success Kid template.



Griner, through her attorney, notified the Defendants that they infringed her copyright. She requested removal of the posts, suggesting a settlement for past unauthorized uses. No settlement was reached. Griner sued for copyright infringement and a violation of Sam's privacy.

At trial, the jury found that neither the Congressman nor the Committee were liable for an invasion of Sam's privacy, that the Congressman had not infringed Griner's copyright, but that the Committee had innocently infringed the copyright—awarding $750 in damages, the statutory minimum. Both parties sought costs and attorney's fees. The district court denied all attorney's fees but granted-in-part and denied-in-part the motions for costs.

---

[3]A screenshot of the meme on the campaign Facebook page. *See* Alan Yuhas, *Mother of 'Success Kid' Demands Steve King Stop Using His Meme*, **N.Y. Times** (Jan. 28, 2020) https://www.nytimes.com/2020/01/28/us/politics/steve-king-success-kid-meme.html (last accessed May 31, 2024) (containing the image).

The Committee appeals the damages, asserting it had an implied license to use, and made fair use of, the Success Kid template and thus did not infringe the copyright. The Committee also argues the district court abused its discretion in two evidentiary rulings, and that the jury should have been instructed it could give less than the statutory minimum for damages. The Defendants appeal the denial of attorney's fees and some costs. [4]

## II.

The Committee raises two copyright infringement defenses: that the Committee had an "implied license" to use the Success Kid template in a meme; and, that the meme is a fair use of the Success Kid template.

## A.

The Committee argues it had an implied license to use the Success Kid template. "Courts may find a nonexclusive implied license where: '(1) a person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work.'" ***Beaulieu v. Stockwell***, 46 F.4th 871, 878 (8th Cir. 2022).

The district court ruled that the "defendants withdrew their implied licenses defense." ***Griner v. King***, 2023 WL 2163994, at *8 (N.D. Iowa Feb. 22, 2023). At trial, Griner's counsel said: "I don't see any way that a colorable argument could be

---

[4]The Defendants assert that the district court erred in ruling that Sam's invasion of privacy claim was not preempted. Because the jury found the Defendants did not invade his privacy, this claim is moot. *See **Doe v. Pulaski Cnty. Special Sch. Dist.***, 306 F.3d 616, 621 (8th Cir. 2002) ("An appeal must be dismissed as moot when our decision will have no 'effectual relief whatever to a prevailing party.'").

made for implied license."  The Defendants' counsel agreed:  "I don't disagree with opposing counsel.  I think that's probably right.  I think we'll concede that."

Issues conceded at trial are waived on appeal.  *See **Dahlgren v. First Nat. Bank of Holdrege***, 533 F.3d 681, 693 n.7 (8th Cir. 2008), *citing **United States v. Olano***, 507 U.S. 725, 733 (1993).  The Committee waived the issue of implied license.

## B.

The Committee argues it "can defend against a claim of copyright infringement because it made 'fair use'" of the Success Kid template.  *See **Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith***, 598 U.S. 508, 525 (2023).  "The fair use of a copyrighted work . . . is not an infringement on copyright."  **17 U.S.C. § 107**.

The jury found that the Defendants did not make fair use of the Success Kid template.  This court reviews mixed questions of law and fact de novo, while giving deference to the jury's findings of underlying facts.  *See **Google LLC v. Oracle Am., Inc.***, 593 U.S. 1, 23-24 (2021).  "[R]eviewing courts should appropriately defer to the jury's findings of underlying facts; but that the ultimate question whether those facts showed a 'fair use' is a legal question for judges to decide de novo."  ***Id.***

Four factors, in the Copyright Act, define fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

**17 U.S.C. § 107**. "[T]he four statutory fair use factors may not 'be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Andy Warhol*, 598 U.S. at 550-51, *quoting Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). The Committee argues that the first, third, and fourth factors favor a determination that it made fair use of the Success Kid template (and concedes the second factor).

As for the first factor, the Committee argues its use is like the billions of other uses of the Success Kid template, the creation and dissemination of a meme. In the first factor, the "'central' question" is "whether the use 'merely supersedes the objects of the original creation . . . (supplanting the original), or instead adds something new, with a further purpose or different character.'" *Id.* at 528, *quoting Campbell*, 510 U.S. at 579.

When an infringing use "is commercial as opposed to nonprofit," the "commercial nature of the use"—while "not dispositive"—"is to be weighed against the degree to which the use has a further purpose or different character." *Id.* at 531. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*, *quoting Campbell*, 510 U.S. at 579. *See United Telephone Co. of Missouri v. Johnson Pub. Co., Inc.*, 855 F.2d 604, 609 (8th Cir. 1988) ("Fair use is not favored 'when the user stands to profit from the exploitation of the copyrighted material without paying the customary price.'"), *quoting Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). A use that "shrink[s] the protected market opportunities of the copyrighted work" is less justified because it "undermines the goal of copyright." *Andy Warhol*, 598 U.S. at 531-32, *quoting Authors Guild v. Google, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015). Memes used commercially in advertising or fundraising are subject to stricter copyright standards than memes used noncommercially, which are often fair use. *See Campbell*, 510 U.S. at 585

("The use, for example, of a copyrighted work to advertise a product . . . will be entitled to less indulgence under the first factor of the fair use enquiry").

"The fair use provision, and the first factor in particular, requires an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement.'" *Andy Warhol*, 598 U.S. at 533. This court weighs commerciality against its transformativeness. *See id.* at 531.

As for commerciality, it is undisputed that the Committee's use was purely commercial—the meme solicited campaign donations with its call to "FUND OUR MEMES!!!" The Committee sought to exploit the copyrighted material, for financial gain, without paying the customary price.

As for transformativeness—adding a purpose or character to the original work—there is a dispute. Creating a meme was not the original purpose when Griner photographed Sam. However, controlling the commercial use of the meme was the original purpose to copyright the image of Sam, the meme's template. The Committee, by creating and disseminating a meme, did not add a further purpose or different character to Success Kid template. *See Andy Warhol*, 598 U.S. at 532-33 ("If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying.").

Transformativeness "relates to the justification for the use." *See id.* at 531. Memes are transformative to differing degrees, requiring a case-by-case determination. *See id.* at 532 n.7 ("the question of justification will depend on the individual use or uses"). The Committee asserts that memes, including its own, combine a compelling image with a pithy phrase to invoke a response, usually humor.

Because the Committee's meme was a "commercial use" of the Success Kid template, a "particularly compelling justification is needed." *Id.* at 547. The

Committee's stated justification is that they were creating and disseminating a meme on social media, as happens millions (if not billions) of times each day. "[T]he fact that everyone else is doing it" is not a particularly compelling justification, especially considering the vast majority of these uses are non-commercial. *Cf. Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 321 (6th Cir. 2024) (finding the "everyone else is doing it" justification unpersuasive in a jurisdictional context). Beyond this, the Committee "offers no independent justification, let alone a compelling one, for copying the photograph, other than to convey a new meaning or message. As explained, that alone is not enough for the first factor to favor fair use." *Andy Warhol*, 598 U.S. at 547. "[A]lthough a use's transformativeness may outweigh its commercial character, here, both elements point in the same direction." *Id.* at 538.

Due to the lack of a further purpose, a different character, or a compelling justification *and* the undisputed commercial use, the first factor weighs in favor of Griner.

As for the third factor, the "heart" (the most substantial part of the work) of the Success Kid template—the Success Kid himself—is used in the Committee's meme. *See Harper & Row, Publishers*, 471 U.S. at 544. The third factor weighs in favor of Griner.

As for the fourth factor, it is difficult to determine what impact the Committee's use of the Success Kid template had on its commerciality. True, Griner licensed the use of the template to many well-known brands. Licensing requests, however, had decreased before the Committee's use, although a reasonable jury could conclude that association with King would drive away some potential licensees. There is no evidence that the Committee's meme revitalized the market for licensing the Success Kid template. The fourth factor weighs in neither party's favor.

Because the fair use test weighs heavily for Griner, the jury properly concluded that the Committee did not make fair use of the Success Kid template.

## III.

Defendants raise three other issues: two evidentiary disputes, a challenge to damages instruction, and the issue of costs and attorney's fees.

## A.

The Committee asserts that the district court abused its discretion by (1) excluding, for a lack of relevance, evidence connecting Success Kid with Pepe the Frog and (2) allowing the testimony of Ben Clark, Sam's entertainment agent.

This court reviews evidentiary rulings "for clear abuse of discretion, 'reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" ***United States v. Anderson***, 783 F.3d 727, 745 (8th Cir. 2015), *citing **United States v. Henley***, 766 F.3d 893, 914 (8th Cir. 2014). This court "will not reverse a harmless error." ***United States v. Johnson***, 860 F.3d 1133, 1139 (8th Cir. 2017). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." ***United States v. Farish***, 535 F.3d 815, 820 (8th Cir. 2008).

At trial, the Defendants sought to introduce evidence that Griner was politically motivated, had accepted past associations with inflammatory political groups, and promoted distasteful uses of the meme. The Defendants particularly highlight their offer of evidence linking Success Kid to Pepe the Frog (which the defendants call an emblem of the alt-right). The district court excluded all this "political" evidence. On appeal, the Committee does not contend that the exclusion was an abuse of discretion, only that it should have considered the evidence in the

"award of attorneys' fees." The Committee asserts the connection of Success Kid to Pepe the Frog lessens Griner's "moral indignation" towards King. Any moral indignation Griner may have has no bearing on copyright infringement. Thus, the evidence could not influence the verdict, and any error was harmless. The district court did not abuse its discretion.

At trial, Ben Clark testified about the actual damages the Defendants' meme caused. On appeal, the Committee does not explain how Clark's testimony had any influence, let alone more than a slight influence on the verdict—even pondering whether admission of Clark's testimony was harmless error. Clark testified to actual damages, not to violations of the Copyright Act. After finding the Committee infringed Griner's copyright, the jury awarded the statutory minimum under the Act. Thus, the exclusion of Clark's testimony could not have influenced the jury to the Committee's detriment. The district court did not abuse its discretion.[5]

B.

The Committee challenges the jury instruction of the $750 statutory minimum. It did not object to the jury instruction when given. "If a party does not properly object to preserve the issue for appeal, objections to jury instructions are waived, absent a showing of plain error." **Riggs v. Gibbs**, 66 F.4th 716, 719 (8th Cir. 2023). "Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." *Id., quoting* **Bady v. Murphy-Kjos**, 628 F.3d 1000, 1003 (8th Cir. 2011). Even if the Committee were correct, it does not assert a miscarriage of justice. The jury instruction challenge is waived.

---

[5]The Committee asserts a discovery violation preceding the Clark testimony and in obtaining a privilege log. The district court did not abuse its discretion. *See* **8th Cir. R. 47B**; *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018).

-11-

C.

The Defendants assert the district court abused its discretion in not awarding attorney's fees and additional costs to the Defendants. The Committee seeks attorney's fees because Griner rejected a pre-trial settlement offer that was greater than the jury award and because it made novel legal arguments. *See generally* **Fed. R. Civ. P. 68**; *Marek v. Chesny*, 473 U.S. 1, 9 (1985) ("the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute").

The Committee cannot recover attorney's fees because it is not a prevailing party. Under the Copyright Act, only prevailing parties may be awarded a reasonable attorney's fee. **17 U.S.C. § 505** ("the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). *See Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 645-46 (7th Cir. 2001) (holding that attorney's fees are available only for prevailing parties under the Copyright Act); *UMG Recs., Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1035 (9th Cir. 2013) (same).

As for the Congressman: By the Copyright Act, the district court, "in its discretion," "may" award "recovery of full costs" and award a prevailing party "a reasonable attorney's fee" as "part of the costs." **17 U.S.C. § 505**. The district court here, in its discretion, denied attorney's fees to both parties. The Congressman does not allege an abuse of discretion, acknowledging that the district court had no obligation to award him costs or fees. This court affirms the decision not to award attorney's fees. *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015) ("A district court abuses its discretion" when it "'commits a clear error of judgment.'"), *quoting Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1152 (8th Cir. 2011).

As to additional costs, the Defendants seek costs for multiple printer cartridges used before trial. The district court did not abuse its discretion by denying these costs. *See* **8th Cir. R. 47B**.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____